JAMES SLOAN, JR. *vs.* THE SAFE DEPOSIT AND TRUST
COMPANY OF BALTIMORE, TRUSTEE, and others.
JAMES H. ATKINSON *vs.* SAME.

*Equitable conversion—Sale of Land—Purchaser at a Judi-
cial sale—Presumption.*

Where a testator by his will directed the immediate conversion of
all his estate into money by a trustee, and its investment in
stocks or money loans, and thereby the land of the testator was
equitably converted into money, a sale is valid, though the in-
fant distributees were not made parties defendant in a proceed-
ing therefor, and though the theory on which the petition sought
the sale was not correct, facts sufficient to authorize the sale
having been averred, and there being a general prayer for relief.

A will directed the sale, and conversion into money, of all the
property of the testator, by a trustee. A sale was made, and
ratified by the Court; but the buyer never complied with the
terms of sale, he having failed in business and become insolvent.
On a petition, subsequently filed, for a resale, it was HELD:

That the previous sale could be rescinded by the Court, the pur-
chaser having voluntarily appeared in the cause and filed an
agreement that the sale made to him might be set aside, although
infant distributees were not made parties defendant, and the
petition for a resale made no mention of the previous sale, and
did not ask to have it set aside, or the decree under which it was
made, vacated.

A purchaser, under a judgment or decree of a Court of competent
jurisdiction, may presume that the Court has taken all the
necessary steps to investigate the rights of the parties, and that
the decree under which a sale is made was passed after due and
proper investigation.

APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*C. Baker Clothworthy*, and *J. Southgate Lemon*, for the appellants.

*Henry C. Kennard*, and *S. Teackle Wallis*, for the appellees.

IRVING, J., delivered the opinion of the Court.

The appellants in this case purchased certain real estate from the appellee as trustee or receiver under a decree of the Circuit Court of Baltimore City, and have excepted to the sale for several reasons, which are supposed to affect the jurisdiction of the Court to order the sale, and therefore render their title insecure. A brief history of the case, culminating in this sale, is necessary to an intelligent apprehension of the question involved.

In 1848, Andrew Popplein died leaving a will, by which he gave his whole estate to his brother Nicholas Popplein, if he should survive him, and if not to his nephew, George Popplein, in certain trusts. Nicholas Popplein died before the testator, and the alternative devise took effect. That devise was as follows: "I give, devise and bequeath all my estate to my nephew, George Popplein, his heirs, executors and administrators, in trust and confidence, nevertheless, and to, for and upon the uses and to the ends, intents and purposes, and under and subject to the powers and limitations following, and none other, that is to say, in trust that he or they shall and will as soon as practicable, after my decease, convert the same into ready money, and invest the amount in stocks, or place the same out at interest upon good security, as may be deemed by him or them most advisable and beneficial, and so on, from time to time, as occasion may require, to change the investment or sell the stocks

or any part thereof, and the proceeds thereof receive and reinvest as aforesaid." The estate is then divided by the will and codicil into certain specified proportions, the description of which is not necessary to the proper understanding of the question herein involved. The codicil made George Popplein, Nicholas Huppman and Nicholas Popplein, and the survivors or survivor of them, executors and trustees of his will.

On the thirteenth of August, 1862, Ferdinand Bodman and Catharine, his wife, (the latter being one of the legatees and distributees under the will of her uncle, Andrew Popplein,) filed a bill in the Circuit Court of Baltimore City, setting out the will, and charging that the executors appointed had accepted the trust committed to them by the testator, who died in 1848, but had passed but one account, and were derelict in their trust; and asking for an account, and that other trustees should be appointed, if the Court thought it necessary and proper from the developments of the case. It averred the death of George Popplein, unmarried, and without issue, and the devolution of his interest under the will upon his brothers and sisters, and that the trusts had survived to the surviving executors. It also averred the death of some of the other legatees, and the granting of letters on their estates, and all the parties were brought in by process.

In April, 1863, "a bill of revivor and supplement" was filed by the complainants, through their counsel, Thomas S. Alexander, averring that they had theretofore filed their bill for an account, and the execution of the trusts under the will of Andrew Popplein, and that before answer filed, Nicholas Huppman, one of the executors, had died, leaving no children, but leaving a wife and will, by which he gave her all his property, and leaving her his executor, and that she was herself a legatee under the Popplein will, and a party to the suit,

but that the same ought to be revived against her as executrix of her husband's will. It also averred the death of Valentine Huppman and the devolution of his interest as legatee on his only child, Anna Huppman, and the full administration of Valentine's estate by Nicholas Huppman before his death. .This petition prayed for such relief as the case required, and brought in by prayer for process all the new parties made necessary by deaths. Upon this petition, on the 20th of May, 1863, by the consent of Nicholas Popplein, the only surviving executor, Nicholas A. Huppman was appointed receiver, and all the estate was directed to be surrendered to him. Subsequently this receiver died, and on proper petition the Court appointed the appellee receiver, with all the powers vested in the former and deceased receiver. Meanwhile sundry deaths had occurred amongst the claimants under the will of Andrew Popplein, which had been suggested by proper petition, and the representatives of such deceased parties were made parties. In the interim also, viz., in July, 1877, on interlocutory petitions in the cause, the Court had authorized the sale of a portion of the real estate to Richard J. Capron, for the sum of one hundred and twenty-five thousand dollars; that is to say, twenty-five thousand dollars cash, and the residue to be reserved as a redeemable ground rent, at six per centum per annum; and by its decree had appointed the receivers, Nicholas A. Popplein and Nicholas Huppman, trustees, to make the sale. The sale was made, reported, and finally ratified, but it seems was never actually perfected by the payment of the agreed cash payment and the execution of the necessary instruments for the creation of the lease and reserving the agreed ground rent. Capron never went into possession, as the sale was not finally consummated, and the receiver continued in possession, managing the property.

On the 25th of February, 1889, the appellant, Sloan, with his wife who is a distributee of the estate, with sundry others of the parties entitled to shares of the estate, filed an interlocutory petition setting forth that for many years the trust had been administered under the direction of the Court, and that the life tenants of the estate had all died, and that the time had arrived for a division under the will. It averred that there was real estate unsold and owned at that time by the parties in interest as tenants in common, and asked that the same and all the trust property be sold, and that the receiver should file a statement in detail of all the trust estate in his hands and that there might be an adjustment of all the rights of the parties, and for such relief as the case required. All the parties in interest who were not made interlocutory petitioners were made defendants, answers were filed, testimony was taken and the case proceeded to decree. When the case came before the Court for decree, it seems to have been discovered that under the decree of July, 1877, the real estate had been sold to Richard J. Capron as hereinbefore recited, who had never complied with the terms of sale, although the sale had not only been authorized by the Court, but had been reported to and ratified by the Court. Thereupon Capron came in, and, by written agreement filed in the cause, agreed that the sale might be rescinded, and the Court passed a decree rescinding the sale and the decree under which it was made, and decreed the sale of the property by the receiver as trustee. The trustee sold and reported his sale, and it is to that sale and report that the appellants except.

In substance the exceptions are: 1st. That valid title cannot be made because James Briscoe, Jr., and Elizabeth R. Briscoe are entitled to 19-108 parts of the estate after the death of their father, and Nicholas Huppman, infant, is entitled to from 7 to 9-108 parts after

the death of his mother. 2nd. Because appellants cannot get a title because the sale to Capron had never been validly set aside so as to bind the infants. 3rd. Because the equitable title to the land was in Capron; that a sale was not necessary for partition, and it was not to the advantage of the infants to have the land sold. 4th. Because the infants were not made parties defendant by guardians to protect them. And 5th. Because the parties named as next friends of the infants in the petition of 23rd of February, 1889, did not sign a written authority to the solicitor for the purpose, nor was any such authority filed with the proceeding as required by section 125 of Art. 16 of the Code of Public General Laws. All these objections go to the jurisdiction of the Court to do what has been done effectively as against the infants interested. It is conceded that irregularities in the exercise of the jurisdiction, if the jurisdiction was really acquired, would not avail to sustain the appellants' contention; but it is contended that the jurisdiction to do what was done was not perfectly acquired. It is an established principle that a purchaser, under a judgment or decree of a Court of competent jurisdiction, may presume that the Court has taken all the necessary steps to investigate the rights of the parties, and that the decree under which a sale is made, was passed after due and proper investigation. *Newbold vs. Schlens and Wilkens*, 66 *Md.*, 588-90; *Gregory, et al. vs. Lenning, et al.*, 54 *Md.*, 56.

There are without doubt some irregularities in this case, but we do not think they affect the validity of the title the appellants will acquire under the sale to them. All the proceedings in the case must now be considered in the light of the fact that Andrew Popplein by his will directed the immediate conversion of all his estate into money, and its investment in stocks or money loans; and that thereby the land of the testator, was by the

terms of the will equitably converted into money, and only required actual sale by the trustee named in the will, or his successor in the trust, duly appointed by a Court of equity, to complete the transmutation.  Looking at it in this view, it becomes wholly immaterial what provision of the Code the framer of the interlocutory petition of February 25th, 1889, may have had in his mind when he filed that petition; for in point of fact neither of the Acts of Assembly referred to in the brief, and discussed at bar, applied to and met the necessities of this case; but still the allegations of that petition do bring facts enough to the knowledge of the Court connected with the pending case and trust to justify the prayer for a sale of all the property belonging to the trust estate for the purpose of distribution, and to call into exercise the powers of the Court to direct such sale. The will had directed the sale of all testator's property; and when the Court was informed by any one interested that the trustee appointed was dead or had neglected or refused to execute the trust by selling the estate, it was perfectly competent for the Court upon bare application by *ex parte* petition to appoint a trustee to execute the directions of the will in regard to sale.   Code, Art. 16, sec. 79.

In order that this power of the Court may be exercised, it has never been deemed necessary to bring into Court by process the distributees of the fund the will raises by sale; for the order of the Court is only enabling the will to be executed according to the testator's directions.   *Hammond vs. Hammond,* 2 *Bland,* 306; *Fulton, et al. vs. Harman, et al.,* 44 *Md.,* 251.

Again, the uniform practice, of the Court of equity, is, under a general prayer for relief such as the case may require, to grant any needed relief which is not repugnant to, or inconsistent with, the specific prayer.  *Townshend vs. Duncan,* 2 *Bland,* 45; *Powell vs. Young,* 45 *Md.,*

494.   An inappropriate allegation will not defeat the right to relief under the general prayer, if the bill or petition makes a case justifying the relief actually granted. *Campbell vs. Lowe,* 9 *Md.,* 500.

In this case the interlocutory petition sought the sale of the trust property, and facts enough were averred to entitle to relief; although the theory on which the petitioners proceeded was not the correct one.   The sale to Capron was not averred, and in fact it seems it was not really known to the draughtsman of the petition.   It is this omission to charge the existence of such sale, and the action of the Court in respect to it when discovered that complicates this case and makes the only seeming difficulty in it; and that we will now consider.

The sale to Capron was specifically authorized by the Court before it was made, and trustees were appointed by the decree to complete it, and to convey upon ratification of the sale, and full compliance with the terms fixed by the decree.   The sale was made and ratified, but Capron never complied in whole or in part with the terms of sale, and never was given possession of the property.   The receiver kept possession and managed it as before until the sale to the appellants.   Shortly after the sale was agreed upon and reported, Capron failed in business and became insolvent; and practically the sale to him was abandoned by him and the trustees.   No effort appears to have been made to coerce compliance under section 194 of the 16 Art. of the Code, and it is fair to presume as he was insolvent, it was regarded as useless to attempt to coerce him into compliance.   In fact it nowhere appears that he ever made any written contract with any body binding him to it.   The whole thing seems to have been most carelessly and imperfectly done; yet by the ratification of the sale, notwithstanding he had not complied with the terms of sale, he would seem to have acquired some interest in the property.

*Mealey vs. Page, Ex'r,* 41 *Md.,* 183. At any time after non-compliance with the terms of sale, the Court could have ordered a re-sale of the property because of the default, and could have ordered it sold at the purchaser's risk; but that would seem to be a wholly nugatory condition and provision when the non-complying purchaser is a known insolvent, and unable to pay the deficiency if the property should not bring the original price agreed to be paid by him for it. A re-sale of the land was all the remedy the trustees had to get their money; and if the property did not bring what Capron agreed to pay for it, and Capron was insolvent, it does not appear how anybody could be and was injured by rescinding the sale outright, and selling again without reserving any rights as against Capron. The order for re-sale would have the effect of setting aside the sale to Capron in order to make title to another purchaser. The decree which was passed not only set the Capron sale aside, but annulled and vacated the decree authorizing it, and that, exceptants say, could not be done effectually without bill of review and making the infants parties defendant; and this petition cannot be regarded, appellants say, as a bill of review and the infants were not effectively made parties.

It is very true that the petition upon which the decree was passed makes no mention of Capron's purchase, and has no prayer to set aside sale to him, nor to vacate the decree under which it was made; and the only justification for allusion to the Capron sale in the decree seems to be the voluntary appearance of Capron in the cause, and filing an agreement that the sale made to him might be set aside. So far as he was concerned, he thereby effectually estopped himself from ever asserting any rights under his purchase. His express agreement that the Court might set aside the sale to him forever concluded him; and the Court so regarding it decreed the sale of the

property.    It is certainly true as contended by the appellants that a decree cannot be vacated without a bill of review after the same has became enrolled, but we do not think this case falls under or is controlled by that rule.  'Nothwithstanding the enrollment of the decree and lapse of sundry terms, the Court had the unquestioned control over the sale to Capron until it was perfected, and the purchase money all paid, and for non-payment of the purchase money, the Court could vacate the sale and sell again.    And such order, if nothing had been said about vacating the decree, would have the effect of annulling it, because that decree was not for sale generally, but simply authority to trustees to accept an offer made by Capron for the property, and would not have justified a sale to any one else.    Whenever, therefore, the sale to Capron was set aside, which the decree authorized, of what possible avail was the decree afterwards?

If the trustee or trustees had asked for a resale, in an *ex parte* petition, the infants would not have been necessary parties to justify action on and under it.    The Court had taken charge of their interests, in taking charge of the trust, and would protect them; and it was not necessary to call on them to answer every proceeding which changing circumstances made necessary for the proper execution of the trust.    The will had directed the sale and conversion into money of all the property of the testator, and the proceedings taken were all for the purpose of effecting the testator's purpose and wish, and it is not perceived how the infants whose rights to share in the funds were only prospective, and to be enjoyed after their parents' life estates expired by their death, could be necessary parties to enable the Court to perfect the conversion equitably wrought by the will.    But if it were true that the vacation of the *decree* authorizing the sale to Capron was not effectual as against them for

the reasons suggested by counsel, the new *sale* ordered was good against them; and it does not follow that the appellants' title could be called in question by them or for them, to the purchaser's prejudice. The Court had the unquestionable right to sell again for non-compliance with the terms of sale. Such sale has been made; and for full value it would appear by the report of the trustee; and we could not see how any one could be benefited by rejecting that sale, and directing new proceedings to correct irregularities, and having the Capron sale again set aside, ordering a new sale to be made at largely increased costs, and involving long delay. No one is interposing now on the behalf of the infants to object to the sale, notwithstanding full opportunity exists for such proceedings, and there seems to be no reason to suppose any objection ever will be interposed. In fact there would seem to be no possible ground for *their* interposition; for they have no title to the land. Nothing can be plainer than that their interests are solely rights to distributive shares of personalty into which the will has converted the land, and to perfect which a sale by the trustee was necessary to make title. If by possibility, any liability exists on the part of Capron in which those infants have any interest, it would be necessary for them to assert their rights through the trustee who holds for their use and benefit, and that would be against Capron personally or his representatives, and not against this land. We cannot see therefore how the infants by any proceeding hereafter can put the appellants' title in jeopardy. The Court has jurisdiction of the whole subject-matter of the trust created by Andrew Popplein's will, and for the purpose of administering that trust all necessary parties are in Court; and, although some of the rules of correct practice have been violated, and some of the rules of Court may not have been regarded, the Court has undoubted right, to overlook irreg-

ularities in matters where they have unquestioned juris-diction, and to approve when done, that which it would upon more regular proceedings, have ordered to be done. We think the exceptions to the sale were properly over-ruled and the order will be affirmed on each appeal.

*Order affirmed, and*
*cause remanded.*

(Decided 5th December, 1890.)