Opinion by
 

 Rhodes, J.,
 

 Appellant filed a bill in equity alleging that the Community Loan Company and Paul E. Green, or one of them, practiced fraud upon appellant in the purchase of his stock in that company, and prayed that an injunction be granted restraining defendants from paying in distribution any sum on the shares of stock which had been owned by appellant to any other, person than appellant, and for an accounting of the proceeds of the stock which belonged to appellant if the same had been sold. After answers had been filed by both defendants, hearing was held. No evidence was produced by appellant to show that the Community Loan Company had anything to do with the sale or purchase of appellant's stock. Green will be referred to herein as defendant.
 

 Appellant was the registered owner of 25 shares of capital stock of the Community Loan Company, which
 
 *400
 
 was a small, minority interest. These certificates of stock appellant had delivered or caused to be delivered to the Oil City National Bank of Oil City, Pa., as collateral for a note of Elizabeth C. Forbes held by said bank in the amount of $6,000 and dated October 16, 1932, together with his written consent to such hypothecation, and also giving the bank the right to sell the stock at any time with or without notice. On October 28, 1935, the liquidating trustee of the Oil City Bank wrote to R. W. Dixon, of the Butler County National Bank and Trust Company of Butler, Pa., requesting that he ascertain whether there was any market for this stock. At that time the $6,000 note of Elizabeth O. Forbes was in default, with interest due from December 1,1932, for which the 25 shares of stock in question and other securities were held as collateral. Dixon made inquiry of defendant, who was a director and manager of the company, and was advised that the last sale of stock of which defendant had knowledge was at $65 per share in February, 1933. Dixon so informed Mr. Campbell representing the Oil City Bank. Subsequently defendant ascertained from Dixon that it was appellant’s stock that was being offered for sale by the bank. Dixon, at the suggestion of defendant, thereupon conferred with appellant, and advised him that the bank was going to dispose of his stock, and that he should protect it. After conferring with appellant on two or more occasions, Dixon sold the stock to defendant at $65 a share. Prior to the sale, appellant, having been told by Dixon that the bank proposed to sell this stock, refused to redeem it by the payment of $65 a share to the bank. Dixon received the certificates from the Oil City Bank on November 4, 1935, delivered the same to defendant, and received the sum of $1,625, which he remitted to the Oil City Bank on November 6th. The stock was transferred to defendant on the books of the company on November 6,1935. During this period nego
 
 *401
 
 tiations were being carried on for the sale of all or part of the assets of the company. On October 8, 1935, a committee was appointed by the board of directors, which committee included defendant, to consider a proposition for the sale and purchase of the accounts receivable of the company. On November 1st a representative of the Personal Finance Company offered the committee $84,000 for the company’s accounts receivable. This offer was refused. On November 4, 1935, the directors of the company authorized the officers to execute a contract for the sale of the accounts receivable of the company for the sum of $90,000. On November 12, 1935, at a meeting of the directors of the company, a call for a special meeting of the stockholders of the company was authorized for the purpose of approving or disapproving of the sale of certain accounts receivable of the company to the Personal Finance Company. On November 26th, at a meeting of the stockholders, a sale of the accounts receivable for $90,000 was approved.
 

 Defendant did not come in contact with appellant during the negotiations for the sale of appellant’s stock; nor did he divulge to Dixon that there were negotiations pending for the sale of the accounts receivable of the company. On December 5, 1935, distribution was made to the stockholders of the company in the .amount of $100 a share, and defendant, as owner of the 25 shares of stock so purchased by him, received the sum of $2,500 on account thereof. It appears probable that when all of the remaining holdings of the company are disposed of a small final additional distribution will be made to the stockholders. .
 

 Appellant made no inquiry of any of the officers or directors of the company at the time his 25 shares of stock were offered to him at $65 a share by the Oil City Bank. Nor did he make any inquiry at any other time relative to the said stock. Neither did defendant nor
 
 *402
 
 any officer of the company advise appellant concerning the value of the stock* of the company. Appellant made no request to examine or be shown the books of the company prior to the disposition of his stock.
 

 The bill in equity was dismissed and the injunction dissolved. Exceptions were filed to the chancellor’s findings of fact and conclusions of law. They were dismissed by the court, and the decree nisi made final, from which final decree this appeal was taken.
 

 The chancellor was of the opinion that the conduct of defendant could not be construed as fraudulent, and that there were no special circumstances sufficient to create a fiduciary or confidential relationship between defendant and appellant. We think that the chancellor reached the correct conclusion on the facts as presented and found in this case. The material facts were not in dispute.
 

 The fact that defendant was an officer and director of the corporation, whose shares he purchased from appellant, does not of itself, in the absence of special circumstances, create a fiduciary relationship between them as to the sale of the stock.
 
 Moore et al. v. Steinman Hardware Co.,
 
 319 Pa. 430, 179 A. 565;
 
 Commonwealth Title Insurance & Trust Co. v. Seltzer,
 
 227 Pa. 410, 418, 76 A. 77.
 

 Appellant contends that there are special circumstances in the instant case which definitely remove it from the operation of such rule, and that defendant was under obligation to divulge the information, which he possessed relative to the negotiations for the sale of the assets of the company, to appellant and reveal his identity as purchaser of the stock in question. A review of the facts discloses noi basis, in our opinion, for appellant’s contention. Appellant complains that defendant made no effort to inform him of the value of the stock, and that the statements of defendant to Dixon, while not untrue, were misleading. The trans
 
 *403
 
 action involving the sale of appellant’s stock was between the representative of the Oil City Bank and defendant. Dixon was acting for the Oil City Bank and not for appellant. The latter had no dealings with defendant. It is obvious that appellant was not misled by anything that defendant did or said. The latter made no false representation to anyone, and there was no attempt by him to suppress any fact which he was obliged in good faith to divulge to appellant. See
 
 Klerlein v.
 
 Werner, 307 Pa. 16, 160 A. 719. The bank was the seller, and the stock was sold for its benefit. Defendant’s purchase of the stock, in so far as appellant was concerned, was no different than a purchase in the open market or through a broker. Furthermore, the negotiations relative to the sale of the accounts receivable of the company were not finally consummated until November 26, 1935. At the time when appellant’s stock was sold to defendant, the negotiations were not completed and there was no assured sale.
 

 Appellant was advised by Dixon that the bank proposed to sell and apply the proceeds on the note for which the stock was pledged as collateral. He was given the opportunity, but refused to redeem it. He made no inquiry as to its value, but evidently concluded “that the stock was gone” when he loaned it to be used as collateral. The bank, having the right to sell, disposed of the stock at $65 a share to defendant. Any greater amount which the bank might have realized would likewise have been applied to the payment of the note upon which $6,000 with interest was still due. In appraising the relationship between appellant and defendant, it is also to be considered that defendant did not seek to purchase appellant’s stock, but, on the contrary, the bank which held it sought a purchaser. To no extent did defendant induce appellant to part with his stock. Appellant was not in a position to complain of its disposition by the bank, as the bank had his authority to sell,
 
 *404
 
 without notice, at public or private sale. The bank alone was the interested party, especially in view of the fact that appellant stated to Dixon that the stock was gone when he pledged it, and that he did not wish to follow it any further. Appellant manifested no concern as to how much of the $6,000 note might be liquidated by the sale of this collateral.
 

 Appellant cites and relies upon
 
 Strong v. Repide,
 
 213 U. S. 419, 53 L. Ed. 853. In no way is the case controlling. In that case it appears that defendant was not only a director of the company, but he owned three-fourths of the shares of its stock, and was, at the time of the purchase of the stock of plaintiff, administrator general of the company, with large powers, and engaged in negotiations which finally led to the sale of the company’s lands. Before the negotiations for the sale were completed, defendant employed an agent to purchase the stock of plaintiff, and concealed from plaintiff’s agent his own identity and his knowledge of the state of the negotiations and their probable result. The court held that the final consummation of the sale was in defendant’s hands at all times, and that there was fraud in the purchase of plaintiff’s stock by defendant.
 

 There does not appear to have been any duty on the part of defendant to have sought out appellant and to have advised him of the pending negotiations for the sale of certain assets of the company, and to have informed him that he was a prospective purchaser of appellant’s stock. The record shows an absence of such circumstances as would create a fiduciary relationship between them in this transaction.
 

 Decree of the court below is affirmed, at the cost of appellant.