WILLIAM H. HARLAN, Substituted Trustee, Etc., *v*
DANIEL I. GLEASON

[Nos. 25 and 26, October Term, 1941.]

*Decided November 7, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*H. Breckenridge Heaps,* for appellants.

*Joseph J. Rehm,* for appellee.

FORSYTHE, J., delivered the opinion of the Court.

The record in this case brings up two appeals from the Circuit Court for Harford County. The first is from an order of April 1, 1941, overruling a demurrer to the petition of the appellee, and the second is from a decree passed on May 6, 1941.

From the record, it appears that in the year of 1908 Patrick Gleason died possessed of a tract of land in Harford County, and by his will devised all of his property to his widow for her life, and after her death to three of his children, F. Catherine Gleason, Agnes B. Gleason (now Agnes B. Lynch, widow) and J. Beauregard Gleason, for their lives, and upon the death of the survivor the property was to be divided *per stirpes* among all of his children.

In order to pay a mortgage on the above-mentioned land, the timber on it was sold, after proper proceedings, and Edwin H. Webster was appointed trustees to make the sale. The sale was made, and the said trustee reported to the court, and an audit was stated and ratified on July 25, 1925. The account showed the residue of the proceeds derived from the sale of the timber, in the hands of the trustee, after the payment of the mortgage and costs of the proceeding, to be $1,465.83. The trustee then

filed a petition upon which he secured an order of court, on November 1, 1926, to invest the sum of $1,465.83, as a part of a first mortgage of $2,500, on the farm of John T. Hushon and wife. Of that sum, $1,429.19 was invested in the Hushon mortgage. That mortgage had been given to Webster and he assigned to himself, as trustee, a portion of the mortgage representing $1,429.19. On the twenty-fifth of February, 1929, Webster died, and on April 3, 1929, William H. Harlan was appointed substitute trustee. Harlan filed his bond, and assumed management of the estate. On November 1, 1938, Harlan filed a report, and had an audit stated, showing the amount of the estate in his hands to be $1,465.83, of which $1,429.19 was invested in the above-mentioned Hushon mortgage. That account was duly ratified.

The next proceeding in this cause was the filing, on March 7, 1941, of the petition by Daniel I. Gleason, the administrator of the estate of Agnes B. Lynch, as administrator and individually. That is the petition upon which the decree now appealed from was passed. That petition alleges that the three joint tenants of the trust all have died, and the trust now has terminated, and that the said administrator of Agnes B. Lynch, the last survivor, is entitled to all income collected by the trustee, and to a full accounting. The petition then expressly alleges that the trustee "no longer has any power to accept, receive or collect any further moneys in this cause, or to perform any further duties as such trustee, except to render a full and final report and accounting to this honorable court, and to bring into this court all corpus of the said estate and any part of the income issuing therefrom now in his hands and undistributed, and to abide the orders of this court with respect to the same, to the end that said trust may be terminated and the said trustee discharged." The petition prayed that the trustee be "restrained and enjoined from collecting or accepting from any person, or persons, any further money, either as principal or interest, corpus or income, or in

any other matter whatsoever, pertaining to the investment in part of the mortgage, executed on November 1, 1926, by John T. Hushon and Mary R. Hushon." Another prayer of the petition asked that the trustee be required to account, have an audit stated, and make distribution of the corpus and income on hand.

A combined demurrer and answer was filed to the petition. The answer admitted that the trust was at an end, and averred that it was the duty of the trustee to convert the corpus of the estate into cash, state an account and distribute the income and corpus to those persons entitled thereto, under the direction of the court. The answer also alleged that the mortgage in which the corpus was invested was in process of foreclosure, and the trustee had filed in the foreclosure proceedings his petition setting forth the amount of his claim and asking the court to direct the auditor, when stating an account in the foreclosure proceedings, to allow the trustee the amount due him under the mortgage. Also, the answer averred that it was the duty of the trustee, after receiving the corpus in cash, to state an account and distribute the estate to those persons entitled.

On April 1, 1941, the court overruled the demurrer, and the appeal from the order overruling the demurrer was entered.

Then on May 6, 1941, the decree appealed from was passed. The decree stated "that all of the relief prayed for in said petition should be granted," and ordered the trustee to file a complete report and account within fifteen days; that the auditor state a final account, and distribute the corpus in this cause direct to all "the respective abovementioned administrator and the heirs of Patrick Gleason." The decree permanently restrained and enjoined the trustee from "collecting or accepting" the corpus of the estate invested in the mortgage in process of foreclosure.

Under the petition, the whole controversy is about who shall distribute the corpus of the estate.

The rule of law in reference to the procedure to be followed in the settlement of trust estates which have terminated has long been considered settled in this State and elsewhere.

In 65 *C. J.*, Sec. 551, p. 685, it is stated that "it is the right and duty of a trustee, and of him alone to proceed by suit, or other legal proceedings, if necessary, to collect or reduce to possession the property and assets belonging to the estate, and to collect all claims due the estate." 26 *R. C. L.*, Sec. 134, p. 1283. In *Restatement of the Law of Trusts*, Secs. 175 and 177, pp. 451 and 454, it is stated the "trustee is under the duty to take steps to enforce any claim he holds as trustee." In *Bogert on Trusts and Trustees*, Vol. 4, Sec. 820, p. 2386, it is said: "Frequently a trustee is obliged to foreclose a mortgage held by him as an investment. If he holds for life *cestui* and remainderman, he must determine the rights of each in any sum of money he realized by means of the foreclosure." Also, in 65 *C. J.*, Sec. 717, p. 835, it is stated: "Final distribution of the trust property on termination of the trust is as much a part of the trustee's duties as the administration of the trust prior to that time. A trust does not become fully executed until the subject matter of it has been properly paid over to the *cestui que trust* * * *."

In reference to the powers and duties of a trustee in closing a trust, *Restatement of the Law of Trusts*, Vol. 2, Sec. 344, p. 1066, etc., states: "By 'the time for the termination of a trust' is meant the time at which it becomes the duty of the trustee to wind up the trust. * * * Although the time for the determination of the trust has arrived, the trustee does not necessarily cease to be trustee, but he continues to be trustee until the trust is finally wound up. * * * The powers and duties of the trustee in winding up the trust are similar to the powers and duties of the trustee in administering the trust," until the process of winding up is completed.

The petition in this case, filed by one of the parties entitled to a portion of the estate does not allege that

the present trustee has refused to account, or that he has been guilty of any misconduct, or mismanagement of the estate, or of any single act inconsistent with the proper handling of the trust estate.

The petition is inconsistent. In the twelfth paragraph it states that the trustee has no further powers, except to render a full account, and final report, by bringing into court all the corpus of the estate. It then asks that he be enjoined from collecting or receiving the corpus from anyone. The decree followed the petition in ordering the trustee to file a "complete and final report and account," so that the "auditor shall distribute the corpus and income," and after so ordering, the decree then restrained and enjoined the trustee from collecting or receiving the corpus.

Upon what theory it was expected that the trustee could bring the corpus into court before he had received it, is not clear. The fund was in the hands of the assignee who foreclosed the mortgage. An audit in this cause could not distribute a fund in another and separate proceeding. The trustee could not be required to account for corpus unless the money had been paid to him. *Cole v. Boarman*, 51 Md. 229.

In his answer to the petition the trustee recognized it was his duty to bring into court all corpus and income and distribute it under an audit with the authority of the court. He had filed his claim to the fund with the assignee, and had done everything required of him, as trustee, up to that point. Manifestly, he could not report having in his hands a fund before he actually received it. In fact, it is averred in the answer, and not denied, that the court had ordered the auditor, in stating the account in the foreclosure proceeding, to allow to the trustee the amount due him as trustee, with all arrearages of interest thereon.

With no disputed issue before it, except the right of the trustee to collect the corpus, the lower court accepted the allegation of the petition that the trustee has no fur-

ther duty in collecting the corpus, as the law, and so decreed. But that, definitely, is not the law. The long-accepted practice in closing trust estates, as indicated by all the authorities, some of which are herein cited, is for the trustee to collect all trust funds, report to the court, have an audit stated, and actually distribute the fund accordingly as the court orders. That procedure must be followed, otherwise the trustee could not secure proper and binding releases so as to relieve himself and his bond. There are no facts or circumstances disclosed in the record in this case which would justify a departure from the accepted practice in settling trust estates, and unless that procedure is adhered to, endless confusion will result.

The petition here was premature. Had the trustee collected the corpus, and then delayed or refused an accounting, the beneficiaries of the trust would have had the right to appeal to the court to compel the trustee to account.

The motion to dismiss the appeals was based upon Article 5, Section 43, of the Code. That provision provides that a, trustee shall have the right of an appeal, with the consent and approval of the court, from any final decree entered by which any preference, or priority between creditors, or other persons interested in the estate, is determined.

Shortly after that provision of the statute had been enacted by the Act of 1933, Ch. 460, this Court considered the statute in *Lindsay v. Stemper*, 166 Md. 257, 170 A. 766. In that case there was a question of whether the corporation was solvent or insolvent, and whether the receivers were appointed to wind up its affairs and distribute its assets.

The appeal was by the receivers from an order of court according to priority to one of the creditors. This Court held that an appeal from an adjudication of priority between creditors required the approval of the court.

Here, the situation is entirely different. The appellant, as trustee, is not attempting to appeal from an order determining any question of preference, or priority be-

tween those interested in this trust. He is endeavoring only to be permitted to complete the performance of his duty, as trustee, in the administration of a trust imposed upon him by the court. In an appeal like this, the trustee is not required to secure the approval of the court.

> *Motion to dismiss appeals in Nos. 25 and 26 overruled. Order overruling demurrer in No. 25 reversed. Decree in No. 26 reversed, and petition dismissed. Costs following the petition of March 7, 1941, to be paid by the appellee.*