# CLARENCE U. LLEWELLYN, ET AL. *v* QUEEN CITY DAIRY, INC. ET. AL

[No. 164, October Term, 1945.]

50

Decided July 23, 1946.

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Thomas Lohr Richards* and *Horace P. Whitworth, Sr.,*
for the appellants.

*D. Lindley Sloan* and *George Henderson* with whom
was *F. Brooke Whiting* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

On February 23, 1946, the Queen City Dairy, Inc., filed
its amended bill of complaint against Clarence U.
Llewellyn and Harvey E. England, in the Circuit Court
for Allegany County, in Equity, to which the defendants
interposed a combined demurrer and answer. Thereafter
James E. Miltenberger and J. William Loar, respectively,
petitioned the court to be made parties plaintiff in the
case, and the court passed orders permitting them to be
made parties plaintiff, and each of them adopted, in its
entirety, the allegations of the amended bill of complaint.
There was objection to the court's action in this regard,
but we do not think it necessary to discuss this objection.
On March 20, 1946, the court ordered that "the demurrer
to the amended Bill of Complaint be and it is hereby
overruled, except as to paragraph five of said amended
bill, as to which paragraph Five it is sustained." The
court further ordered "that James E. Miltenberger and
J. William Loar be and they are hereby admitted as part-
ies plaintiff to this proceeding." Whereupon, on the same
day the defendants interposed a combined demurrer and
answer to the amended bill of complaint "now filed
herein after the Court has by its order made J. William
Loar and James E. Miltenberger each party plaintiff,
which parties were added after the filing of the original
demurrer and answer to the amended bill of complaint."
On March 22, 1946, the court passed its final order in the

case, overruling the demurrer of defendants to the amended bill of complaint, "except as to Paragraph 5 of said amended bill, as to which Paragraph 5 it is sustained." It further ordered "that the restraining order of this Court heretofore passed in this case on the 30th day of January, 1946, be and the same is hereby revoked by the Court with consent of all parties." From this order the case comes here on appeal.

The appellees filed a motion to dismiss the appeal, and assert as reasons therefor:

1. "As the record in this case now stands, the appeal is only from so much of the original and amended Bills of Complaint as prayed for a declaratory decree.

2 "The original and amended Bills of Complaint also asked for the writ of injunction (which was granted) but this was dissolved by mutual agreement at the time of the signing of the Order of Court dated March 22, 1946, from which Order this appeal is taken.

3. "That the appeal is, therefore, from an interlocutory order which does not dispose of the case on its merits, or decide finally any matter now before the Circuit Court."

The appeal in this case was taken from the order overruling the demurrer to the amended bill of complaint. The amended bill contained two prayers. The writ of injunction referred to in the motion, which was granted and subsequently dissolved by mutual agreement, was based on the second prayer of the amended bill of complaint, which is as follows: "That pending a determination of the questions presented by this Bill of Complaint, the said defendants may be enjoined from assigning the said options, or be restrained from transferring the said options, or be restrained from transferring the said options to any third person or from transferring any stock purchased thereunder to any third person."

The first prayer is: "That a decree may be passed declaring the rights, status and other legal relations between the said defendants and the corporation."

The demurrer challenges the right of appellants under the allegations of the amended bill of complaint to relief under either prayer of the bill and this appeal cannot be considered simply as an appeal from an order passed on the original bill, and subsequently dissolved by mutual agreement, before the defendants filed their combined demurrer and answer. The demurrer challenges the allegations contained in the amended bill of complaint as legally insufficient to pass a final decree upon either of the prayers of the bill. In the arguments before this court appellees contended that the order appealed from is an interlocutory order. The argument is made that because the court only sustained the demurrer to paragraph five of the bill, this action renders its order on the demurrer an interlocutory order from which no appeal can be taken. This paragraph of the amended bill refers to a by-law of the corporation, which is as follows: "A stockholder desiring to dispose of his shares of stock must first offer them to the company through the Board of Directors, at market value."

In this paragraph it is stated that this by-law is of doubtful validity, but even so it "imposed a moral obligation upon the defendants to observe it; and they accepted the office of director with this by-law as one of the conditions to be observed by stockholders, among whom were the defendants, in the performance of their duties as such directors."

The lower court held this by-law to be null and void under the corporation law of Maryland. The view of the lower court regarding this by-law is conceded by appellees. This being so, the allegations of paragraph five of the amended bill of complaint may be regarded as surplusage. It would not in any way give rise to, or tend to raise, a right of appellees to the relief prayed for in the amended bill of complaint. This being so, this case falls in that class of cases where this court has recognized an appeal from an order overruling a demurrer to a bill of complaint. The matter was fully discussed by Judge Bailey in *Miller v. Massachusetts Mut. Life Ins. Co.*, 183 Md.

19, at pages 27 and 28, 36 A. 2d 517 at pages 521 and 522. In that case the defendant demurred to the amended bill, which was overruled, when she filed a full and complete answer to the amended bill, and thereafter appealed from the order overruling her demurrer. It was there said: "the action of the appellant in appealing from the order overruling the demurrer must be regarded as a nugatory act."

The Miller case goes on to say: "The decision of the court in *Harlan v. Gleason,* 180 Md. 24, 22 A. 2d 579, is not inconsistent with our ruling in this case, as the court was there considering a combined demurrer and answer filed under the authority of General Equity Rule No. 20."

The appellees in this case filed in the lower court a combined demurrer and answer, and as its demurrer was overruled, under authority of *Harlan v. Gleason, supra,* the order overruling the demurrer was appealable. The motion to dismiss the appeal will be overruled.

The amended bill of complaint, set out in narrative form, is as follows. The corporation plaintiff was chartered in 1904, and has since engaged in selling milk in the City of Cumberland and its environs. Its authorized capital stock is $100,000, divided into one thousand shares of the par value of $100 each, and it has issued three hundred and seventy-six shares, held by forty stockholders, and at the time of the matters complained of the defendants were two of the five directors of the corporation. That they, together with the plant manager of the corporation and its counsel, without disclosing the matter to the other directors and stockholders, entered into an illegal agreement to secure control of a majority of the stock of the corporation for their benefit "or for the benefit of such three and certain outsiders acting through said manager". That said agreement amounted to a conspiracy against the corporation; that the defendants solicited a majority of the stockholders of the corporation, offering $300 per share, and took options from many of them; that in securing these options the defendants made either misstatements or misrepresentations

regarding the financial condition of the corporation and charged a plot on the part of certain other directors to cause the corporation to be mismanaged for the purpose of bringing about the sale of stock or assets for their own benefit. That they also represented that they had an arrangement whereby they were to sell not less than a majority of the outstanding shares to James Laher for a higher price than $300 per share and that they falsely represented to various stockholders that they were to receive $300 per share for the stock. It is further asserted that the difference between $300 and $335 per share, which plaintiffs believe the defendants were to receive for the stock purchased by them was to be used to pay certain expenses and then to be divided between the defendants and the plant manager. It is also charged that the defendants represented that unless a stockholder signed the option he would find himself in the position of a minority stockholder, and that the majority of the stock would be owned by outside interests, not disclosed by defendants, possibly inimical to the welfare and best interests of the corporation, or of the minority stockholders, and by such representation a stockholder was intimidated and thereby sold his stock, or gave an option thereon, even though he did not want to do so. It is charged that the defendants, as directors of the corporation, were acting in a fiduciary capacity for the benefit of all the stockholders and that they have violated their duties as directors and that the stock they purchased should be held for the benefit of the corporation and all of its stockholders and used to further its corporate purposes; that the loyal directors and holders of more than two-thirds of the outstanding and issued stock have agreed that if these proceedings are successful the corporation will cancel the options of all who do not desire to sell and will endeavor to buy at $300 per share or to sell to local producers of milk the stock of those few stockholders who wish to sell.

It is further charged that the defendants admitted that they intend to transfer the stock for which they

have secured options to buy to certain outside interests, whom they refused to disclose, and that unless such transfer of said stock is restrained and enjoined the corporation and the minority stockholders will suffer irreparable damage and that they have no adequate relief at law.

It is further asserted that this suit was brought at the request of the owners and holders of the majority of the stock of the corporation and is for the equal *pro rata* benefit of all stockholders. We have heretofore set out the prayers of the bill.

This bill asserts that the defendants entered into an "illegal agreement or arrangement" with the plant manager and the counsel to the corporation to secure control of a majority of the stock; that said agreement amounts to a "conspiracy" and that in pursuance of "such agreement or plan" options were secured. What this agreement was, that is characterized as illegal and as a conspiracy and as a result of which options were obtained, is not set out in the bill. The bill further charges the defendants with making "misstatements or misrepresentations regarding the financial condition of the company, or charging a plot on the part of certain other directors to purposely cause the company to be mismanaged" so that a sale of "its stock or assets" would be brought about to the benefit of the defendants. What these misstatements or misrepresentations or plot were is not set out in the bill.

It thus appears that the main grounds upon which relief in this case is predicated is based upon the mere assertion of an "illegal agreement or arrangement", that said "agreement or arrangement" amounted to "a conspiracy against the plaintiff corporation", or a "plot" as above referred to; that in soliciting the purchase of stock "misstatements", "misrepresentations", and the "charge of a plot" were made by the defendants, and yet there is not a thing set out in the bill to show what the "illegal agreement", the "conspiracy", the "misstatements", and "misrepresentations", and the "plot" were.

These assertions are mere characterizations of the needed facts rather than allegations of them, and cannot be considered. *Brack v. Barton,* 185 Md. 366, 45 A. 2d 100.

The first question that arises in this case is whether a corporation can maintain a suit on behalf of stockholders who have been induced, through misrepresentation and fraud, to sell their stock to directors of the corporation who made the misrepresentation and practiced the fraud upon the stockholders, assuming that the bill correctly and specifically points out the matters constituting the misrepresentation and fraud.

"Corporations, like natural persons, therefore, unless there is some restriction in the charter, 'may maintain all such actions as are necessary to assert their rights when invaded, or to give them a recompense for any injury that can be done to them'; and, *e converso,* they may be sued like a natural person, to enforce any obligation to which they may be subject, or to obtain redress for any wrong for which they are liable."

"Because of the doctrine of corporate entity, the rule that a person cannot sue himself does not apply as between a corporation and its stockholders or members, and they may litigate antagonistically to each other."

"For the purposes of action and judgment, the corporation and its members are distinct personalities or entities. Corporate rights of action are distinct from those of the members or stockholders, except when in equity or to prevent crime or wrongdoing the separate entity is disregarded. Corporate entity will be disregarded and the acts of members treated as corporate acts in a proper case, as where one corporation is merely an instrumentality, agency, conduit or adjunct of another corporation, or in case of fraud, or to prevent evasion of law or legal obligation or duty, or in case of internal dealings between the corporation and its members. Whether an action or suit should be brought by the corporation or by a member, or against the corporation or against a member, depends upon which has the right of action or which is liable. The corporation, and it alone, may sue to recover

property of the corporation or to recover damages for injuries done to it."

"The corporation and members are distinct for purposes of suit; each must sue or be sued in its or his name, whichever is proper to the cause of action."

"Action or suit should be brought by the corporation or by the member, whichever has the right of action, and against the one or the other, whichever is liable; and it should be in the name of the proper party plaintiff and in name against the proper defendant, in order to obtain judgment in accordance with the right."

"This is not a technicality but a vital procedure. For the purposes of action and judgment they are distinct personalities or entities. The stockholders are not parties to an action by or against the corporation alone, nor is it a party because they are; and disqualifications attached to the status of a 'party' do not attach to members of the corporation when it is the party and they are not, although a disqualification by 'interest' may attach. Generally speaking, suit brought against the stockholders or the corporation does not affect the other."

"By the weight of authority a director or officer has the same right to buy stock from a stockholder of the company as any one else has." Fletcher Cyclopedia Corporations, Permanent Edition, Vol. 9, Secs. 4226, 4228, and 4231; Vol. 1, Sec. 36; Vol. 3, Sec. 1168.

The burden of complaint in this case is that the defendants, as directors, obtained options to purchase stock from stockholders and as a result thereof damage accrued to the corporation and such stockholders. There is nothing illegal in a director buying stock from a stockholder. Of course, he cannot resort to misrepresentation and fraud in purchasing stock, just as a stranger to the corporation cannot resort to such methods. And unless there is a fiduciary relation existing between a director and an individual stockholder of a corporation, as contended by appellees, the matter is perfectly legal.

In 84 A. L. R., page 616, it is stated: "The general rule, as already indicated, is that an officer or director of

a corporation does not sustain a fiduciary relation to an individual stockholder with respect to his stock, and consequently the mere failure on the part of such officer or director, in purchasing the shares from the stockholder, to disclose any inside information, will not militate against him so long as he does not actively mislead the seller or perpetrate a fraud; in other words, ordinarily, a corporate officer or director has a right to purchase the stock of a shareholder therein, the same as any other person has a right to purchase such stock, and there is nothing in the mere fact that the purchaser is an officer or director of the corporation whose shares he purchases from which fraud or unfair dealing may be inferred." See 19 C. J. S., Corporations, Sec. 793, subsec. b; and 13 Am. Jur., Sec. 1010. The weight of authority sustains this view.

"The directors of a commercial corporation stand in a relation of trust to the corporation and are bound to exercise the strictest good faith in respect to its property and business. * * * The contention that directors also occupy the position of trustee toward individual stockholders in the corporation is plainly contrary to repeated decisions of this court and cannot be supported." *Goodwin v. Agassiz*, 283 Mass. 358, 186 N. E. 659 at page 660.

"Fact that defendants in bill in equity were directors created no fiduciary relation between them and plaintiff in matter of sale of his stock to one of defendants for price less than that for which it was resold." *Blabon v. Hay*, 269 Mass. 401, 169 N. E. 268. See *Imbrie v. Community Loan Co.*, 131 Pa. Super. 398, 200 A. 149.

It has been held that where stock was purchased from holders thereof and they were not told that it was being purchased for the interest or account of another corporation, the failure to disclose the fact does not give rise to actionable deceit and that the shareholder had no interest in who was the purchaser, but only in getting a satisfactory price. *Haverland v. Lane*, 89 Wash. 557, 154 P. 1118.

"Director or active officer stands in fiduciary relation to corporation and probably as to stockholders, but not as to their stock; director or active officer of corporation has same right as any other stockholder to buy or sell stock." *Seitz v. Frey,* 152 Minn. 170, 188 N. W. 266.

"Directors may purchase stock from stockholders in a corporation and do not, in making such purchases, occupy a fiduciary relation; hence, where there was no fraud or concealment, the stockholders cannot recover, though they sold their shares at much less than their actual value." *Shaw v. Cole Mfg. Co.,* 132 Tenn. 210, 177 S. W. 479.

Appellees contend that Maryland has not followed the general rule of law, supported by the authorities above, that a director does not act for a corporation where he buys for himself its stock from a stockholder but that he acts in the matter as a *quasi* trustee and is bound to make a full disclosure. They rely chiefly upon the case of *Ross Transport v. Crothers,* 185 Md. 573, 45 A. 2d 267. We do not agree that the authorities cited support the contention of appellees, as the cases they cite simply support the proposition that "trustees cannot purchase at their own sale, and trustees, in this sense, include directors of corporations". This was stated by Chief Judge Marbury in the case of *Ross Transport v. Crothers, supra,* and nearly all of the cases cited on appellees' brief were quoted or cited by the Chief Judge in that opinion. This case does not involve a trustee purchasing at his own sale. But aside from the legal question thus posed in appellees' brief, there is nothing in the amended bill of complaint that tends to show that the stockholders did not have in their possession a knowledge of the affairs of the corporation. They knew that the par value of the stock was $100 and they were offered and sold their stock at $300 per share, and for whom the directors purchased the stock or that a profit thereafter would be made by the purchasers, is immaterial. Everyone knows, as these stockholders must have known, that purchasers of stock do not anticipate a loss, but a profit.

The matter of intimidation of the stockholders asserted in the bill is without force. Certainly they did not have to sell their stock, and there was nothing to prevent them from holding the offer, pending an investigation and consideration of the condition and affairs of the corporation before they sold their stock.

The allegation that the stockholders were damaged in the transaction is without force. First, in view of its par value of $100, and second, in view of allegation of the bill that if the appellees are successful in this litigation the corporation will endeavor to buy stock at $300 per share and sell to producers of milk the shares of the stock that holders thereof wish to sell. Certainly if the corporation buys and sells stock at $300 per share no loss accrued to the stockholders when they sold their stock to the directors at $300 per share. For the kind of representation that will vitiate a sale of stock see *Boulden v. Stilwell,* 100 Md. 543, 60 A. 609. One cannot rely upon a prophecy of future events as a representation that will vitiate a transaction. We hold that under the allegations of the amended bill in this case: 1. There is no fraud on the part of the defendants, clearly and definitely averred, that would vitiate the purchase of stock by them. 2. That the defendants, as directors of this corporation, in the purchase of the stock or the securing of options thereon, were not acting for or on behalf of the corporation but individually, and that the directors, as individuals, had a right to purchase the stock or secure options therefor. 3. That a share of stock is personal property of the holder (*City of Baltimore v. Allegany County Com'rs,* 99 Md. 1, 57 A. 632) and as to such personal property the corporation has no equitable interest at all, but is a stranger. No right accrues to it if a shareholder in a sale thereof is cheated through misrepresentation and fraud. The right of action is in the shareholder. 4. That the corporation plaintiff cannot maintain this bill, even assuming that the defendants (directors) obtained options or purchased stock from shareholders by means of misrepresentation of material facts or failure to disclose

same, for the reason that it has no interest in the matter. An action in deceit by the shareholder sustaining damage would accrue against a purchaser who was guilty of such conduct.

As the corporation is not a proper party in this case, and as the respective shareholders, if they have been defrauded by the defendants, would have an action in deceit at law, there is no reason why we should remand this case to the lower court for further proceeding.

*Motion to dismiss appeal overruled; decree reversed and amended bill of complaint dismissed, with costs to appellants.*