## HITCHENS *v.* SAFE DEPOSIT & TRUST CO. OF BALTIMORE

[No. 138, October Term, 1948.]

54

*Decided April 28, 1949.*

The cause was argued before MARBURY, C. J., and DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Leonard Weinberg* and *J. Paul Schmidt,* with whom were *Weinberg & Green, Meyer M. Ohen* and *George L. Clarke* on the brief, for appellant.

*Edmund P. Dandridge, Jr.,* with whom were *Venable, Baetjer & Howard* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

Laura May Hitchens, the wife of Herbert Henry Hitchens, entered into a separation agreement with him on June 11, 1928, whereby he agreed, among other things, to pay her, as "permanent alimony", the sum of $50 per month until January 1, 1929, and thereafter the sum of $65 per month, until the estate of John H. Hitchens, the grandfather of Herbert, "shall have been finally settled and the said husband receive his distributive share in said estate, at which time the said husband does hereby agree to pay over to the said wife, her heirs, personal representatives and assigns, in lump sum, one third of the amount distributed to him by the trustee named under the will of the said John H. Hitchens, upon receipt of which lump sum aforesaid the permanent alimony shall cease." Subsequently, she was divorced from Herbert by the decree of a Virginia court.

On February 26, 1948, the appellant issued a non-resident attachment in the Superior Court of Baltimore City against Herbert Henry Hitchens, to which the separation agreement was attached as a voucher, and levied upon "all the right, title and interest of the defendant, Herbert Henry Hitchens, in and to all those two fee simple lots of ground" in Baltimore City, known as 33

and 35 West Lexington Street. The Safe Deposit and Trust Company of Baltimore, surviving trustee under the will of John H. Hitchens, filed claim to the property attached, and a plea of property in it. The trustee did not file a plea on equitable grounds. The appellant filed a replication, and after hearing before the Court, without a jury, there was a verdict and judgment for the claimant, from which this appeal was taken.

John H. Hitchens died on November 15, 1915, leaving a will wherein the residue was devised and bequeathed in trust for the benefit of his wife, Margaret, his daughter Sadie A. Meakin and his daughter Grace Leach, for their respective lives, and for the benefit of his grandson, John H. Stocksdale. He then provided: "From and immediately after the death of my wife, Margaret J. Hitchens, and my daughters, Sadie A. Meakin and Grace Leach, it is my will that the said * * * [trustee] shall continue to hold the said rest, residue and remainder of my estate in special trust and confidence, that is to say:

"To have, hold and manage the same and to collect the rents, income and profits arising thereout and after the payment of all costs, charges and liens thereon, including the proper costs incident to this trust, to pay the net income arising from this portion of my estate so held in trust, as follows: After paying to my said grandson, John H. Stocksdale, the portion of the income of my estate bequeathed to him in this my Will, I give, devise and bequeath said balance of the net income therefrom unto my grandchildren (including my grandson, John H. Stocksdale) living at the time of my death, in equal shares (if there be more than one or to the survivor of them, if there be but one living at the time of my death) until my youngest grandchild living at the time of my death shall reach the age of twenty-one years, when the trust shall cease and all property, chattels and effects then constituting the corpus of the estate shall be sold and the proceeds of such sale shall be divided by my said trustees or the survivor or successor in the trust among my grandchildren entitled to take under this my will."

By the Fourth Item of his Will the testator provided as follows:

"It is my Will and I do direct that the devises, legacies and bequests herein made, both corpus and income, shall be paid to the respective beneficiaries entitled thereto or to their legal guardian when any of them is a minor, into their hands and not into the hands of another, whether claiming by their authority or otherwise, so that neither a creditor nor an assignee nor any person but the persons herein named and designated shall receive any part of my estate."

By the Fifth Item of the will, the trustee was given a broad power of sale, for purposes of division or otherwise.

At the time of his death, the testator was survived by his widow, who died in 1937, a son, William F. Hitchens, who died in 1930, and his two daughters. William had one child, Herbert, who is still living. Grace H. Leach had one child, John H. Stocksdale, who died in 1929, unmarried and intestate. After the death of her first husband, Grace married Robert F. Leach, Jr., who died in 1946. There were two children of this second marriage, Margaret Douglas Leach (Holloway) and Robertson Leach, who are still living. Grace Leach died in 1932. Sadie A. Meakin died without issue, intestate, on November 12, 1947, the last survivor of the life-tenants. All of the surviving grandchildren of the testator were then over 21 years of age.

At the time when this proceeding was instituted the corpus of the trust estate consisted solely of the fee simple properties above mentioned. The appellant contends that upon the death of Sadie A. Meakin the legal title to these properties vested absolutely in Herbert Henry Hitchens and the other grandchildren of the testator, free of further trust, and that the levy under the nonresident attachment was effective to reach his interest, regardless of the spendthrift trust provision of the will. The trustee contends that the trust will not terminate until the property comprising the trust estate is sold

and the proceeds distributed; that the testator's direction to sell and distribute worked an equitable conversion; and that the spendthrift trust provisions prevent attachment prior to the distribution.

We think it is clear, from the language of the will, that the trust did not terminate upon the death of the surviving life tenant. Upon the happening of that event, the trustee was directed to continue to hold the residue in trust to make payments of income "until my youngest grandchild living at the time of my death shall reach the age of twenty-one years, when the trust shall cease." It was this trust, to pay income, which terminated at that time. But the trustee was further directed to sell and divide the proceeds among the grandchildren entitled. Thus, the trustee had further duties to perform, *Harlan v. Gleason,* 180 Md. 24, 22 A. 2d 579, and particularly the duty to pay "both corpus and income" into the hands of the respective beneficiaries, in accordance with the spendthrift trust provisions, which applied specifically to "any part of my trust estate." Until the termination of the life estates, there would be no occasion to distribute corpus. If the appellant's construction were accepted, the result would be to nullify the spendthrift trust provision as to corpus. The validity of such a provision has been sustained by this court. *Fisher v. Medwedeff,* 179 Md. 192, 17 A. 2d 141, 138 A. L. R. 1313, and cases cited.

The appellant stresses the phrase "when this trust shall cease," as indicating an intention that the remainders should vest, subject only to the exercise of the power of sale. She argues that the power is merely a "power in trust", or a collateral power, that would not in itself prevent the legal title from vesting in the remaindermen upon the termination of the life estates, at which time all the living grandchildren were over twenty-one years of age.

It is clear that the provision for termination of the trust as to payment of income would not affect the trustee's power to sell and convey a marketable title to the

property. *Helfrich v. Dandy,* 160 Md. 338, 340, 153 A. 57, and cases cited. It was there said: "The suggestion that the trustee may have been without power to sell the property after the death of the surviving grantor is based upon the provision that the trust should then terminate. But that provision must be construed in relation to the direction, which immediately follows it, that the estate should be equally divided among the remaindermen. The duty of making the division was clearly intended to be performed by the trustee. It was essential to the complete fulfillment of the trust which the deed created. An equal division, with respect to the real estate in question, could be accomplished only by a sale and distribution of the proceeds. * * * The conclusion to that effect is required by the evident intent of the deed of trust, which is the controlling consideration * * *." Again, in *Schmidt v. Hinkley,* 115 Md. 330, 335, 80 A. 971, 972, it was said: "That power of sale was not a mere naked power in the trustees, but was coupled with the legal estate vested in them, and as was said in *Johns Hopkins University v. Middleton,* 76 Md. [186] 205, 24 A. [454], 456, 'the entire legal estate must remain there to serve the purposes of the trust until the primary duties prescribed by the will (in this case by the deed) are performed by the trustees.'" While these cases are not directly in point, the reasoning seems fully applicable to the case at bar, where the corpus, consisting wholly of real estate, is not susceptible of division in kind, and there is a positive direction to sell and distribute the proceeds. The appellant's suggestion that the remainderman might, by agreement, compel a distribution in kind, could not affect the construction of the instrument, even if we assume, without deciding, that such an agreement could be given effect in view of the spendthrift trust provision. Since it is conceded that no such agreement has been made, there was no reconversion.

The trustee contends that the testator's direction to sell and distribute the proceeds worked an equitable conversion, and that the only interest of the remainder-

men is to receive distribution of the proceeds of sale. This principle has been frequently recognized in Maryland. *Harrison v. Prentice,* 183 Md. 474, 479, 38 A. 2d 101; *Miller v. Hirschman,* 170 Md. 145, 183 A. 259; *Talbott v. Compher,* 136 Md. 95, 110 A. 100; *Lambert v. Morgan,* 110 Md. 1, 29, 72 A. 407, 132 Am. St. Rep. 412, 17 Ann. Cas. 439; *Stake v. Mobley,* 102 Md. 408, 62 A. 963; *Paisley v. Holzshu,* 83 Md. 325, 329, 34 A. 832; *Sloan v. Safe Deposit & Trust Co.,* 73 Md. 239, 249, 20 A. 922; *Reiff v. Strite,* 54 Md. 298; *Restatement, Trusts,* § 131. The case of *State v. Fusting,* 134 Md. 349, 106 A. 690, cited by the appellant, is not to the contrary, but merely held that the land in another jurisdiction was not converted into personalty, so as to be subject to a succession tax in Maryland, by a direction to sell and distribute the proceeds. *Cf. Restatement, Conflict of Laws,* § 209. The appellant contends that the doctrine of equitable conversion is recognized in equity only, and cannot be given effect in courts of law. A statement to that effect was quoted in *State v. Fusting, supra.* See also *Tatum v. Commercial Bank,* 185 Ala. 249, 64 So. 561.

But despite the fact that many of the text-writers and some of the cases state that the doctrine is not cognizable in actions at law, the great weight of authority seems to be that creditors, of a beneficiary entitled to the proceeds of land, cannot treat the gift as land for the purpose of execution. *1 Tiffany, Real Property,* 3d Ed., § 301, P. 516; *4 Pomeroy, Equity Jurisprudence,* 5th Ed., § 1164 P. 490, n. 19; *Clifton v. Owens,* 170 N. C. 607, 87 S. E. 502; *Houghton v. Pacific Southwest Trust and Savings Bank,* 111 Cal. App. 509, 295 P. 1079; *Hart-Parr Co. v. Chambers,* 116 Kan. 136, 225 P. 1076.

The question in the case at bar is not procedural but requires a construction of the will to determine the character of the interest which the testator intended to convey. That character, at least as between parties claiming under the will, can hardly depend upon the choice of remedy. It is true that the doctrine has been described as a fiction. But Scott has justly remarked; "It is some-

times said that a court of equity regards land as personalty if the trustees have been directed to sell it. This, however, is a fictitious form of expression. It is also sometimes said that equity regards that as done which ought to be done. This again is a fictitious form of expression. When something ought to be done that has not been done, a court of equity, so far from regarding it as having been done, proceeds to order it to be done. It is more accurate to say that where a beneficiary has the right to receive the proceeds of land rather than the land itself, his interest is personal property." *Scott, Trusts* § 131.

It was said in *Lambert v. Morgan, supra* [110 Md. 1, 72 A. 410]: "Where a testator orders his lands to be sold and the proceeds distributed among certain persons, no interest in the land passes to the legatees. They acquire under the will nothing more than a right to receive a sum of money out of the proceeds of sale a mere chose in action, a claim strictly of a personal character. Their interest, being merely a chose in action, and not a right in the real estate, is not the subject of mortgage. Such a mortgage could create no lien. * * * We therefore hold in this case that under the well-settled doctrine of equitable conversion, all of the trust property in this case must be treated as personalty, and that the instruments executed by Mrs. Williams * * * were simply assignments of a fund or choses in action." It may be noted that in the case at bar the separation agreement did not purport to assign an interest in realty, but only to obligate the husband to pay over one-third of the amount distributed to him by the trustee, after the testator's estate "shall have been finally settled and the said husband receive his distributive share in said estate." The time for the performance of that obligation has not yet arrived.

In the *Lambert* case, the claim was filed in an equity proceeding. But in *Paisley v. Holzshu, supra,* a judgment creditor of a beneficiary in remainder of certain real estate under a deed of trust, issued execution under which

the sheriff levied upon his interest therein. A second execution was issued after the death of the life-tenant, and the sheriff sold such interest under and by virtue of the two several writs, and conveyed the same to a purchaser, who brought an action of ejectment. It was held that by a proper construction of the deed of trust the beneficiary took an interest in personalty rather than realty, so that the judgment creditor took nothing by the executions and levies. See also *Houston v. Nowland,* 7 Gill & J. 480; *Cronise v. Hardt,* 47 Md. 433; *Miller, Construction of Wills,* § 339.

*Judgment affirmed, with costs.*