JAMES H. HARSHBARGER et al. v. C. O. HARRISON et al.

(CC 659)

and

JAMES H. HARSHBARGER et al. v. D. E. RICHARDSON et al.

(CC 658)

Submitted September 3, 1942. Decided September 29, 1942.

Lovins, Judge, dissenting in part.

*W. H. Daniel* and *Walter M. Parker,* for plaintiff James
H. Harshbarger and others.
    *Scott & Ducker,* for defendant C. O. Harrison and others.
    *Brown, Jackson & Knight,* for defendant D. E. Richard-
son and others.

KENNA, JUDGE:

This chancery proceeding was instituted in the Circuit Court of Cabell County, and upon sustaining a demurrer to the bill of complaint in final form, the trial chancellor certified to this Court on his own initiative ten separate questions of law so developed. Certified Case Number 658 is in all respects identical save as to parties defendant, it being understood that the same order will be entered here in each case.

Before undertaking to state the nature of the questions certified, it is necessary to recount in some detail the allegations of the original bill of complaint and of the first and second amended bills of complaint, to all three of which the defendants appeared generally, so that the scope of the amendments is not called into question.

The original bill of complaint alleges that the complainants, James H. Harshbarger, J. Paul Chapman and Robert L. Archer, are trustees duly appointed and qualified by and. before the Common Pleas Court of Cabell County on the eighteenth day of July, 1940, to serve instead of S. S. Logan, F. W. Gerchow and J. S. Davis who had, on May 15, 1935, as trustees, received from the Twentieth Street Bank of Huntington in connection with its reorganization in the year 1935 a transfer of certain tangible and intangible assets in trust to be liquidated and applied to the discharge of the indebtedness due its common creditors and depositors, the surplus, if any, to be returned to the bank. A certified copy of the order of appointment is filed as an exhibit with the bill of complaint.

The bill of complaint alleges that in March, 1933, the Twentieth Street Bank was engaged in the banking business, and was using as an affiliated subsidiary the First City Securities Corporation for the purpose of handling certain real estate which otherwise would have been owned by the bank, and that coincidental with the banking moratorium proclaimed by the President applicable to national banks, the Commissioner of Banking of West Virginia, with the approval of the Governor, likewise closed

all state banks, including the Twentieth Street Bank; that as a condition to permitting the last named bank to re-open, the commissioner required it to acquire from its directors and stockholders as a pledge and security for the protection of depositors and other creditors thirty-five thousand dollars in good notes: that pursuant to the commissioner's requirements, the directors met and thirteen out of fourteen agreed to comply therewith by each indorsing a separate note of First City Securities Corporation in the amount of twenty-seven hundred dollars. This was done, W. J. Young, a director and president of the First City Securities Corporation executing thirteen notes in the name of that company and each of the directors, including the defendant, C. O. Harrison, indorsing one and delivering it to the Twentieth Street Bank. The bill does not allege when the notes were to become payable. The Twentieth Street Bank immediately opened for business.

The bill states that within less than thirty days after the bank so opened, or on April 11, 1933, on account of its precarious financial condition, it was required to restrict its operations to those of a conservator and liquidator of its assets until the spring of 1935, when it was determined, with the approval of the Banking Commissioner and of the required stockholders and creditors, to re-organize, and that as a part of the approved plan to do so, the bank assigned to S. S. Logan, F. W. Gerchow and J. S. Davis, trustees for the benefit of its common creditors and depositors, certain listed assets, both tangible and intangible, to be administered in accordance with the terms of the trust agreement then executed by the bank and filed with the bill of complaint as "Exhibit Two," including the thirteen notes executed by First City Securities Corporation and each indorsed by one director of the bank among the assigned assets, all having been renewed from time to time since their original execution.

The bill alleges that the depositors and creditors of the bank are beneficiaries of that trust, and have claims against the trust fund which originally aggregated in excess of three hundred and thirteen thousand dollars.

The bill finally describes in detail the note indorsed by the defendant Harrison and made by First City Securities Corporation dated the fourteenth day of June, 1933, and payable on March 14, 1934, upon which recovery is sought, a copy of which is filed as exhibit number two, and goes on to allege that the note "has been removed from the trust papers" and that it cannot be produced, and ends by praying that they may have a decree for its face amount, plus interest.

The trust agreement filed as an exhibit with the bill of complaint and dated May 15, 1935, is rather long, and contains only two provisions that enter directly into the legal questions raised by this certification, one having to do with the power of the trustees to abandon the collection of any item which is a part of the trust assets, and the other relating to the life of the trust, the former reading as follows:

> "(h) to reduce the rate of interest or waive the payment of interest on any item of trust assets, and to abandon and relinquish any claim in any item of trust assets when it shall appear to the Trustees that further attempts to liquidate the same into cash would prove unprofitable or futile;"

And the other being in these words:

> "The trust hereby created shall continue until the final liquidation of the trust assets has been made in accordance with the terms of this agreement, but not beyond the period of five years from the date hereof; provided however, after the expiration of twelve months from date, upon the written request of a majority in interest of the Certificate holders, the remaining unliquidated trust assets shall be sold by the Trustees, within sixty days thereafter, for the purpose of effecting a final distribution hereunder. Upon the termination of the trust the Trustees shall forthwith make a final distribution and accounting as herein provided."

The trust agreement includes verbatim the form of what is called "certificate of beneficial interest" to be exe-

cuted by the trustee and delivered to each common creditor and depositor setting forth the holder's pro rata interest in the trust estate, and entitling him to receive his share in its liquidation or net proceeds until the claim with interest is discharged. The trust agreement contains also the following provision concerning any surplus of trust assets after the certificate holders have been paid in full:

> "In the event of the payment to the Certificate Holders of the full principal amount of all of the Certificates provided to be issued under the terms hereof, with interest, thereon as stipulated in the Certificates, the remaining unliquidated assets of the trust shall be transferred to the Bank."

The first amended bill, in substance, alleges that the trustees who at the time were managing the trust property, without consideration wrongfully surrendered to the defendant Harrison the note for twenty-seven hundred dollars upon which he was indorser, and wrongfully had that note marked "cancelled," and that in so doing their conduct amounted to a breach of trust of which the defendant was fully cognizant at the time the note was turned over to him.

The second amended bill of complaint contains allegations, the purpose of which is to meet the contention that the trust expired within five years of its date and that for that reason, the plaintiffs, successors of the original trustees, have no power to maintain this suit begun in August, 1941. It charges the former trustees with malfeasance and dereliction in some detail, and alleges the difficulties and complications finally resulting in their removal. We think it unnecessary to further outline the allegations therein contained.

The defendant's demurrer assigns six separate ·questions of law, four of which the trial chancellor held were maintainable, the remaining two being held insufficient, the order of certification setting forth the questions propounded as follows:

"QUESTION I—Does the cancellation and surrender of the note by the original trustees to the defendant endorser constitute a bar to the prayers of the bill, of the first amended bill or of the second amended bill, any or all of them?

QUESTION II—Does it appear from the bills and exhibits that the former trustees had the right and power to cancel and surrender the note described in the bills?

QUESTION III—Do the three bills sufficiently apprise the defendants of the origin and nature of the claims and demands asserted against them?

QUESTION IV—Are the allegations of fraud in the first and second amended bills sufficient in law?

QUESTION V—Do the plaintiff trustees have claim or title to the obligations on the note upon which this suit is brought?

QUESTION VI—Did the trustees have the power after the expiration of five years from the date of the trust agreement or the execution thereof to institute or maintain this suit?

QUESTION VII—Is recovery by the plaintiff trustees barred by laches, either their own, that of the former trustees, or that of the Twentieth Street Bank?

QUESTION VIII—Are S. S. Logan, F. W. Gerchow, and J. S. Davis, trustees and individually, and the Twentieth Street Bank, necessary and indispensable parties to this suit?

QUESTION IX—Are the original and two amended bills sufficient in law or in equity?

QUESTION X—Is the second amended bill sufficient in law or in equity?"

We are under the impression that the questions are to an extent correlated and that they can be dealt with satisfactorily under three major topical headings: (1) Does the indorser defendant's possession of the note marked "cancelled," for the amount of which recovery is sought,

create a presumption of its discharge, which is not overthrown by the further allegations of the bill to the effect that its delivery to the defendant, who is a former trustee, was without consideration, the note then being worth its face value, and, therefore, its purported surrender constituted a breach of trust? (2) Was the Twentieth Street Bank or were former trustees necessary parties to this proceeding? (3) Did the trust agreement operate so that after the lapse of five years from its date, the trust terminated and the trustees had no exercisable power?

It is apparent upon a cursory reading of the trust agreement that the three trustees in the exercise of a sound discretion are not required to attempt the "liquidation" of trust assets when in their judgment that attempt would prove futile, a discretion which we think would be clearly implied in any active trust when the instrument creating it contained no terms to the contrary. However, we feel that it can be safely asserted that a trustee who undertakes to perform the highly fiduciary duty of realizing the cash value of assets, tangible and intangible, is not vested with the right to refrain altogether from undertaking to collect a note, the indorser or co-maker of which is entirely solvent, and to deliver the paper marked "cancelled" to a person who appears to be liable for its payment. That, according to the allegations of the bill of complaint, is substantially what the original trustees did concerning the defendant's note upon which recovery is here sought. Of course, we are dealing only with the charges contained in the bill of complaint, the allegations of which, we think, sufficiently set up a breach of trust committed upon the surrender of the $2700.00 note to the defendant Harrison with nothing of value paid therefor, there being nothing in the bill to show that that course was taken in the exercise of a sound discretion. We believe further that the allegations of the bill of complaint are sufficient in chancery to overcome any presumption that might arise from the possession on the part of an indorser of a negotiable note marked "cancelled." In passing, we wish to say that a different situation would, of

course, arise if the word "cancelled" had been subscribed by the payee, or, perhaps, if the note had been found in the possession of the maker.

On the question of necessary parties, it will be observed that the Twentieth Street Bank undertook to retain a lien upon the trust assets in order to secure the bank's contingent liability to non-assenting creditors and depositors, or others. We think it is unnecessary to pass upon the enforceability of the lien so attempted to be retained other than to say that in our judgment it does confer upon Twentieth Street Bank a litigable right which should be recognized in any chancery proceeding involving property to which that right extends, as here. Concerning the three former trustees, we are of the opinion that in a proceeding where the complainants' right of recovery rests at least partially upon conduct by them alleged to constitute a breach of trust on their part, they are necessary parties.

As to the third topical heading, we are under the impression that in order to prevent an express active trust from being at once subject to internal attack, it should by either clear implication or express provision be limited in point of time so as to comply with the rule against perpetuities, and that under a proper construction of the trust agreement in this instance that was one of the purposes of the five-year limitation here imposed. We believe that that limitation should be read and construed in the light of that general rule, but that if there is nothing to the contrary appearing upon the face of the trust instrument, the required powers of the named trustees extend by necessary implication beyond the instrument's time limit so as to include a reasonable "winding up" period. In the trust agreement now before us, the trustees are expressly granted the power to enforce the liability represented by the trust assets, to sue thereon, and to reduce them to judgment. The exercise of this power, of course, in a workable and practicable manner, would likely result in the trustees being involved in litigation at the end of the five-year period. Unless the necessary

power and title of the trustees were extended beyond that period in instances where the termination of litigation required it, the resultant complications, while not insuperable, would be of quite expensive and troublesome solution. The power to "liquidate" trust assets under the decided cases is quite difficult to define, and we believe should be governed by the context of the trust instrument before us. On that basis, we think that that power of the trustees, excepting the power to dispose of the trust assets by sale, could not be extended beyond the five-year limitation, and, therefore, does not confer upon the trustees the power after the expiration of that period to institute proceedings upon the trust assets for the purpose of reducing them to judgment. We therefore feel that the trial court's ruling in sustaining the defendant's demurrer to the bill of complaint was free from error because the power of the trustees to become parties litigant on their initiative ceased on the fifteenth day of May, 1940, and this proceeding was instituted subsequent to that date by them. We are not here concerned with the power of the named individuals to act as implied agents nor with the ratification of their transactions by those interested.

We think that there is little doubt that the holders of the certificates of beneficial interest, possibly with the non-assenting creditors and depositors who are not such holders, are beneficiaries of the trust agreement, and should, by an order of publication or otherwise, be made parties defendant in any chancery proceeding brought for the purpose of winding up the trust, and that in so far as the collection or sale of the trust assets is concerned, that that also can be supervised in a chancery proceeding where the fund can be distributed.

Based upon the foregoing discussion, we believe that it is unnecessary to repeat in detail the ten questions of law certified by the trial chancellor, and therefore will only deal specifically with the questions, the form or answer to which we think should be altered.

The fourth item certified reads as follows: "Are the allegations of fraud in the first and second amended bills

sufficient in law? The conclusion of the circuit court is 'Yes.'" We do not regard it as necessary in this matter for the allegations of the bill of complaint to contain the specific detail that might be necessary to successfully attack the transaction in question as fraudulent. Here we are dealing with trustees, and if the allegations of the bill of complaint sufficiently describe a breach of trust and the fact that the person trying to realize the benefit therefrom was a knowing participant therein, we believe that is sufficient. Consequently, if the words "breach of trust" are substituted for the word "fraud" in this question, we believe the answer is correct.

The fifth question is this: "Do the plaintiff trustees have claim or title to the obligations on the note upon which this suit is brought?" The trial chancellor's affirmative answer to this question, we believe, should be qualified by confining the powers of the trustees growing out of their claim or title to the right to sell or dispose of the trust assets.

What we regard as the correct answer to question eight has already been set forth to the effect that the former trustees should be made parties defendant in a chancery proceeding wherein their conduct as such trustees is alleged to have resulted in a breach of trust, and that the Twentieth Street Bank by its attempted retention of a lien upon the trust assets had at least a litigable right therein sufficient to make it a necessary party to this proceeding, if it were otherwise maintainable.

Subject to the foregoing exceptions, the holding of the trial chancellor is affirmed as are the answers to specific interrogatories appearing in the order of certification.

*Affirmed.*

Lovins, Judge, dissenting in part:

I do not agree with that part of the majority opinion which holds that the power of the trustees after the expiration of the five-year period is limited to the disposition of the trust assets.

The trust here under consideration was created for the

purpose of paying the creditors of the Twentieth Street Bank the debts owing to them. This is the vital purpose. All others set forth in the trust agreement are secondary or incidental.

The majority opinion places too much reliance on a phrase appearing in the fifteenth paragraph of the trust instrument, and in a measure ignores the other provisions thereof. Construing the trust instrument in its entirety I believe that the time element is secondary to the essential purpose of the trust and that the phrase with reference to the five-year limitation is directory only. I am mindful of the fact that a trust instrument should not be so construed as to violate the rule against perpetuities, and I therefore say that the time for winding up this trust should not be unreasonably extended and in no event beyond a time which would violate that rule.

I do not believe that the trustees appointed in the instrument were diligent in the performance of their duties. It is only just to say that the delay occasioned by this lack of diligence, in part at least, is the cause of the present difficulty of administering and closing the affairs of the trust estate.

The term "liquidate" comprehends a course of conduct—a series of acts—which at the conclusion thereof makes property easy of exchange or disposition, or changes property to its equivalent in current funds.

In my opinion the enforcement of the obligation arising by reason of the indorsement of the notes by defendants is only a step in the process of liquidating the trust assets.

For the reasons herein stated, I believe that the fourth point of the syllabus and that portion of the opinion to which it relates are erroneous. As to the other syllabus points and parts of the opinion, I am in agreement.