This is an appeal from a final decree of the Chancery Division determining who are the beneficiaries of a certain Welfare Fund. L.E. Carpenter Company and a labor union which was the bargaining agent of most of its employees, entered into two agreements dated December 11, 1946, one covering wages and conditions of employment, the other providing for the Welfare Fund. The Fund was to be used only for the payment of premiums on insurance and annuity contracts in order to provide pensions, death, accident and sickness benefits, and hospital and medical services for the "qualifying employees." In the wage contract was a covenant by the employer to pay into the Welfare *Page 256 
Fund five per cent. of the wages of the employees, retroactive to April 1, 1946, and continuing "for the duration of this agreement." The welfare or trust agreement itself contains a similar provision. The employees were not required to, and did not, contribute.
The wage contract, by its terms, was effective until September 28, 1947, and thereafter from year to year unless either party gave notice of termination. The trust agreement contains no clear provision for termination.
The wage contract continued in effect only until September 28, 1947. While it was in force, the employer made the stipulated payments to the Welfare Fund. The payments proved to be larger than the amount needed currently and so the trustees of the fund have on hand more than $25,000. One other factor to be noted is that the employees have chosen a new bargaining agent in place of the old. The learned judge of the Chancery Division decided that, with the termination of the wage contract, the employees qualified to participate as beneficiaries in the Welfare Fund became a fixed instead of a changing group; that is, the trustees hold the fund for the benefit of those persons who were employees at the date of the termination of the wage contract without regard to whether they are presently employees of the company or not.
For whose benefit the money should be held and expended depends, of course, upon the provisions of the trust agreement. The wage contract was not made a part thereof, although it is referred to in the trust agreement but only "for the sole purpose of specifying and determining the groups and classification of employees entitled to the benefits of this agreement." The trust agreement expressly states that the persons entitled to benefits under it include those "who are either now in the employment of the employer or may be hereafter employed." "Membership in the Union is not a necessary condition to be entitled to the benefits hereunder." Half of the trustees are to be appointed by the employer and half "shall be designated by the accredited bargaining agent of the qualifying employees at such time authorized and empowered to represent *Page 257 
them as to wages and working conditions in its sole and complete discretion, or in the event that there is no such accredited bargaining representative, then such trustees shall be elected by a majority vote," etc. "In the event any qualifying employee hereunder shall, for any reason whatsoever, cease to be such a qualifying employee * * * his rights and benefits in and to the fund established hereby shall forthwith cease and terminate." The parties contemplated that the trust agreement should remain effective despite the termination of the wage contract for they related certain provisions of the trust agreement to "any contract then existing between the employer and qualifying employees relating to wages and conditions of employment, * * * or in the event that no such contract shall be in existence at any time during the effective period of this agreement," etc.
To those brief quotations from the trust agreement, we must add two more dealing with the employer's contributions to the fund. The first provides that "a sum equal to five per cent. of the total thereof (payroll) for each week during the period of this agreement shall be accrued and become payable to the trustees." The other I quote at length:
"The obligation of the company and its liability to continue payment to the fund of the sums provided in this agreement is limited to the term of a certain agreement between the parties hereto dated the 11th day of December, 1946, covering wages and working conditions of employment of certain employees of the company. In the event that this agreement and the participation of the company herein shall be terminated, for any reason whatsoever, then and in that event, any and all unexpended sums of money in the possession of the trustees or to which they are entitled from any source whatsoever, less normal and reasonable expenses incident to the administration and termination of the fund, shall be and remain the sole and exclusive property of the employees entitled to the benefits of this agreement, jointly, without separation or allocation of any specific part thereof to any particular employee or group of employees, and in no event shall the company be entitled to the refund of any portion of such unexpended sum, if any."
The parties knew that if the company stopped its payments, the Welfare Fund must, of necessity, come to an end. So they linked the termination of "this agreement" with the *Page 258 
termination of "the participation of the company herein." They assumed that at the date the company ceased payments, the trustees of the Fund would have some moneys on hand, although they probably did not anticipate a sum as large as $25,000. Out of the money then on hand is to be paid first "normal and reasonable expenses incident to the administration and termination of the fund" and then the balance is the property "of the employees entitled to the benefits of this agreement jointly." The Chancery Division held that the trustees should continue to administer the Fund, until it be exhausted, pretty much as though the agreement had not "terminated;" that is, they should continue to pay the normal expenses such as premiums on the insurance and annuity contracts. We entirely agree with this interpretation. But who are the beneficiaries? In whose favor should the insurance policies and annuity contracts be drawn?
The trustees who were appointed by the old union argue that the Fund should be regarded as wages earned by the employees from week to week until September 28, 1947, and should be administered for the benefit of those who earned the money; that workers employed since that date did not bargain for these benefits or earn them and should have no part in them. But this argument runs counter to the spirit of the agreement and we may add, of trade unions generally. A union works for the benefit of the group; not the group as constituted when the charter is granted or the contract is made with the employer, or at some other particular date; but the group of those who are members at any time, an ever changing group. The man who ceases to be a member, loses all title to the assets of the union and loses all benefits of membership while the member elected today comes into all the benefits and advantages that others have won in years gone by. Similarly, this trust agreement was negotiated and signed for the benefit of those who were or might become employees of L.E. Carpenter Company, and for them only so long as they should remain such employees. Such are the clear terms of the agreement. There is no ground for holding that the employer's cessation of payments stops the operation *Page 259 
of these terms of the agreement, or of the principle which they illustrate.
On the argument before us, counsel stated that the termination of the wage agreement coincided with a prolonged strike that resulted in a drastic change in the personnel of the employees. But the strike and the fact that a large number of the old employees failed to return to L.E. Carpenter Company, are not mentioned in any of the pleadings. By stipulation, the case was submitted to the Chancery Division "for decision on the pleadings." Outside of the record so made, we cannot go. The beneficiaries of the Fund at any time are those persons and only those, who are at that time employees of L.E. Carpenter Company who come within the definition of qualifying employees contained in the trust agreement, that is, those who are within the job classifications, groups and categories covered by the old wage contract. Whether they were in the employ of the company in September, 1946, or have more recently entered its employ, is immaterial. The judgment will be reversed.