RODGERS, Justice.
This appeal is from the final decree of the Chancery Court of Rankin County, Mississippi, dismissing the Bill of Complaint filed by appellant, Peoples Bank, of Mendenhall, Mississippi, against appellee, D’Lo Royalties, Inc., a Mississippi corporation, and granting the prayer of appellee’s Cross Bill.
Appellant sought to cancel clouds on its alleged title to an undivided two twenty-fifths (%s) interest in oil, gas and minerals in approximately 2,880 acres of land in Rankin County, Mississippi. Appellee, by its Cross Bill, sought to cancel the claim of appellant, and to be adjudged full mineral owner in said land.
This case was heard on voluminous oral and documentary evidence by the chancellor, and after considering arguments and briefs of counsel, a written opinion and final decrees were rendered in favor of ap-pellee, D’Lo Royalties, Inc.
Appellant, Peoples Bank, seeks a reversal on the basis of facts in the record which are not in dispute, and appeals upon questions of law alone.
The facts necessary for a decision in this case are as follows. D’Lo Development Trust was organized on November 7, 1924, at D’Lo, Mississippi. On this date M. S. Conner and R. L. Mangum conveyed approximately 2,880 acres of land, less a one-eighth (Vs) mineral interest, to five trustees under a Declaration of Trust known as the D’Lo Development Trust. M. S. Conner (usually referred to in the record as Governor Conner) was chairman of the Board of Trustees. A Declaration of Trust was written and recorded.
The background and reasons for the formation of the D’Lo Development Trust were well expressed by Governor Conner by affidavit in 1937:
“In 1924 certain interests were drilling for oil in Rankin County, Mississippi. As a speculation based upon these operations, a group of fifteen or twenty persons purchased from the O’Donnell Trustees approximately 2,900 acres of land in Rankin County, Mississippi, the said O’Donnell Trustees reserving y8 of all minerals in and under said lands. These lands were conveyed to five trustees, known as the D’Lo Development Trustees, who executed a Declaration of Trust in favor of the parties in interest, the life of said trust to extend for five *259 years, with authority in the trustees, in their discretion to extend the trust further at the expiration of the first five year period. This was a business trust with full authority in the trustees to deal with the property as they saw fit. The trust declaration named the parties in interest and provided that any assignment of interest must be in writing and made on the records of the trustees. The declaration of trust was duly recorded in the office of the Chancery Court of Rankin County, Mississippi.”
THE TRUST
The Declaration of Trust recited in pertinent parts as follows:
“And, whereas, R. L. Mangum, C. E. Dorroh, T. L.. O’Donnell, H. B. Barr, and Sennett Conner have been nominated and selected as five trustees in whom shall be the title to said property hereinbefore mentioned, and by these presents the parties so nominated and selected have accepted the said trust imposed in them for the purposes which shall hereafter be set out;
“Now, therefore, the said R. L. Mangum, C. E. Dorroh, T. L. O’Donnell, H. B. Barr, and Sennett Conner do hereby declare and agree as between ourselves and all persons whose interests appear as above herein-stated, and all who may become interested hereafter in said property, and the assigns of such parties that we and our successors shall hold, manage, administer, and dispose of said property so conveyed, assigned, and transferred to us as such trustees, and all additions thereto and proceeds thereof, and all the profits therefrom that may hereafter come into our possession as such trustees, or our successors hereunder, in trust for the following purposes and in the manner and subject to the stipulations herein contained, to-wit:
“(1) The trustees in their collective capacity shall be designated and as far as convenient and practical are to deal under the name of D’Lo Development Trustees, and under that name, as far as convenient and practical, shall hold, manage, acquire, sell, and administer said trust property, sue and be sued by that name, and may sell and convey, lease or otherwise dispose of said property, or any portion or part thereof, and execute all instruments in writing, and generally contract for all purposes they may deem necessary or proper in the acquiring, selling and administering the said trust estate.
“(2) The said trustees in the execution of the trust herein declared shall manage said property in any way they may deem to the best interests of the parties who jointly own said property, and they may sell all of said property, or any part thereof or any right therein, for whatever, in their judgment, may be a reasonable and fair price for same; that such management and control shall be under the sole control and direction of such trustees and by and through themselves or any employee that they may select and clothe with power and authority to control and manage the same. All the expense of the managing of said property shall be a charge against said property, and all profits derived from the management or sale of said property, or proceeds thereof, or any part thereof, or any interest therein shall become a part of the corpus of the said trust estate, to be dealt with by the trustees in their trust capacity for the further development of the said trust estate, or for the declaring of dividends to be set apart in accordance with the decision and judgment of the trustees themselves to be paid to the parties in interest or their assigns in proportion to the interest each and all of said parties or assigns shall have in said estate. The taxes on said property shall be paid as they accrue by the trustees from funds derived from the use and management of said property or from sale of a part thereof or right therein, or if the trustees should deem best to make an assessment against said property to be paid by all parties in interest in proportion to their respective interests in said trust estate.
*260 “(3) It is further specially declared that the trustees shall manage and operate the said trust estate conveyed to them for a period of five years, unless sooner terminated by agreement of all parties, and unless the said purposes for which the said trust is created, shall have been accomplished and the said trustee shall elect before that time to terminate the trust so assumed. After expiration of the time limit herein; this trust may be renewed by the trustees or the beneficiaries in the trust in which event the terms, conditions, and arrangements of this trust may be modified or changed as will then appear to be agreeable.
“(4) The said trustees herein shall have full power to act for and to control the said estate in their collective capacity, in any way they see fit, to execute deeds, leases, contracts, and any other conveyances they may desire; it only being necessary that three and only three of said trustees so acting shall agree and approve any action. In the event of the resignation or death of any trustee, the remaining surviving trustee (sic) may select a successor therefor, so that the number of the trustees executing this trust shall remain five in number as now herein constituted, or the beneficiaries of said trust estate and their assigns may elect such successor or successors in the event of the failure or inability of the trustees so to do.
“(5) The said trustees shall in no wise be personally responsible for any errors of judgment, failures to act, or mistakes not amounting to malfeasance or conduct criminal. One trustee shall not, in any way, be responsible for or incur any liability as a result of the action or conduct of another trustee. The said trustee (sic) shall receive a reasonable compensation for their services rendered, but in no event to exceed actual expenses, except as hereinafter provided. It being understood that no salary is to be charged or collected by said trustees for their services as trustees, without the express consent and approval of the beneficiaries representing a majority in interest. However, the trustees may employ one or more of their number to promote sales, look after trespasses, and do such other things and with such authority as the trustees may deem proper in administering said trust, and may pay such reasonable amount for such services as the trustees may agree upon.
“(6) The trustees may issue to the parties in interest certificates of interest which shall be subject to all the provisions hereof, and shall be transferable only upon the books to be kept by said trustees.
“It is specially understood and agreed that this trust is declared upon the consent and approval of all parties interested expressed in meeting this day held in the offices of D’Lo Guaranty Bank, D’Lo, Miss., with all parties present; and in accepting the trust so imposed the trustees have declared said trust to be for the use and benefit of all the interested parties as here-inabove set out, and their assigns, who are the beneficiaries of this declaration of trust.”
The certificates of interest issued to each party in interest by the trustees on January 15, 1925, were in the following form:
“CERTIFICATE OF INTEREST
“This Certificate evidences the fact that - of -, owns One Twenty Fifth interest in the lands and properties held by the D’Lo Development Trustees, D’Lo, Mississippi, in accordance with the terms and provisions of the Declaration of Trust made by said Trustees on the 17th day of November, 1924, which is recorded in Book 91 at Page 527 of the Records of the Chancery Clerk of Rankin County, Mississippi.
“This Certificate is not transferable and said interest may be conveyed only upon the books of said Trustees by instrument in accordance with the provisions of said Declaration of Trust, and upon approval of said Trustees.
*261 “In testimony whereof witness our signatures this the 15th day of January, 1925.”
“D’LO DEVELOPMENT TRUSTEES “By /s/ Sennett Conner-“Chairman
“ATTEST “/s/ H. B. Barr “Secretary”
THE GULLEDGE INTEREST
One of the original parties in interest, R. E. Gulledge, was issued certificates for a two twenty-fifths (¥25) interest in the trust.
The controversy of this suit concerns the two twenty-fifths (%s) interest of said R. E. Gulledge; therefore, it is necessary to trace the transactions affecting this two twenty-fifths (¥25) interest of Gulledge.
On December 27, 1926, R. E. Gulledge conveyed his two twenty-fifths (¥25) interest to H. B. Barr by warranty deed, recorded, in consideration of $25,000 cash. On January 6, 1927, H. B. Barr, by deed of trust, recorded, conveyed said two twenty-fifths (¥25) interest to appellant, Peoples Bank, to secure a debt. Thus, the undivided two twenty-fifths (¥25) interest of R. E. Gulledge in subject lands had been assigned to H. B. Barr and then, by Barr, assigned to Peoples Bank. It is at this point, however, that a conflict arises in regard to the two twenty-fifths (¥25) interest represented by R. E. Gulledge’s two certificates.
It appears that R. E. Gulledge did not, in fact, surrender the physical possession of his two certificates evidencing his interest in subject lands when he conveyed and assigned his interest in said lands to H. B. Barr on December 27, 1926, by deed duly recorded.
On October 24, 1927, R. E. Gulledge transferred and assigned one of his certificates to D’Lo Development Trust and directed that a one-fiftieth (Yso) interest be reissued to each of his sons, G. W. Gulledge and E. L. Gulledge. This transfer was approved by D’Lo Development Trust on January 27, 1928, and the original certificate cancelled. Appellant, Peoples Bank, contends that this was an illegal second assignment; an ordinary contract attempting to convey an interest in land, and was subject to all defenses and all prior rights and interests, particularly the previous assignment to Peoples Bank by H. B. Barr of R. E. Gulledge’s assignment to Barr. On the other hand, appellee contends that Peoples Bank violated the terms of the Declaration of Trust requiring transfer to be made on the records of the trustees.
On November 24, 1927, R. E. Gulledge transferred his other certificate for one twenty-fifth (¥25) interest, to be reissued, one-fiftieth (Vao) interest to R. L. House and one-fiftieth (%o) interest to himself, R. E. Gulledge, the assignor. This certificate was likewise cancelled and reissued.
It appears that R. E. Gulledge, H. B. Barr and Peoples Bank made some sort of rearrangement in 1928 because Mr. Barr, by deed, reconveyed to R. E. Gulledge the same interest in the trust. The consideration was $1.00 and assumption of a debt of Barr due to Peoples Bank. The former deed of trust and assignment to Peoples Bank by Barr of his interest in the trust was not cancelled. Moreover, R. E. Gulledge executed a deed of trust to Peoples Bank. This deed of trust secured a debt of $9,354.94, which was the former debt of H. B. Barr. Thus, Peoples Bank had an additional assignment from R. E. Gulledge of his two twenty-fifths (¥25) interest in the trust, inasmuch as the bank had retained its former assignment of the same interest under the deed of trust of Barr.
CLAIM OF PEOPLES BANK
R. E. Gulledge later died, and on March 2, 1933, while his estate was being administered, his heirs at law executed a title deed to Peoples Bank, additionally purportedly vesting in it the two twenty-fifths (¥25) interest held by R. E. Gulledge from H. B. Barr and originally belonging to *262 Gulledge in 1924, which was subject to his deed of trust to Peoples Bank. This conveyance to the Peoples Bank by the heirs at law of R. E. Gulledge was for the purpose of liquidating and satisfying an indebtedness owed by R. E. Gulledge to Peoples Bank and in consideration of a release relinquishment in full accord and satisfaction of all debts whatsoever, secured and unsecured, due by R. E. Gul-ledge, deceased, to the Peoples Bank of Mendenhall. This deed was not filed for record in Rankin County, Mississippi, until March 25, 1935. It purported to convey an undivided interest in the 2,880 acres of Ship Island Lumber Company land owned by R. E. Gulledge to the Peoples Bank. This record, however, does not show a delivery of the R. E. Gulledge certificates of interest, nor does it show these certificates of interest to have been transferred to the Peoples Bank.
During the great depression it was difficult to obtain money to pay taxes on the D’Lo Development Trust lands. Consequently, the lands were sold to the state for taxes in 1935, and the title would have ripened in the state on September 16, 1937. However, in June 1937 D’Lo Development Trustees filed in the Chancery Court of Rankin County a “Petition for Partition by Sale and Division of Proceeds,” a proceeding for sale of the lands of the trust and division of the proceeds among the shareholders. The decree for sale was granted on June 18, 1937, and on August 14, 1937, the decree confirming the sale was rendered. The property was sold at public sale to Bruce VanZant, a predecessor in title to appellee, D’Lo Royalties, Inc. VanZant received a Commissioner’s Deed to subject lands, less a one-eighth (1/4) mineral interest.
On August 20, 1937, R. E. Biggs, Sr., the Commissioner appointed by the court, remitted the distributive share from the proceeds of the sale to each party of interest. The heirs at law and transferees of R. E. Gulledge, deceased, were recognized as parties in interest in said partition proceeding, and not Peoples Bank.
Appellee, D’Lo Royalties, Inc., acquired its title to the mineral interest in subject lands through Bruce VanZant, and others, through conveyances in August and October of 1937.
Appellant appeals to this Court assigning as error the following: (1) The trial court erred in adjudging appellee to be the rightful owner of the minerals in controversy. (2) The trial court erred in adjudging that appellee exercised dominion over the severed minerals in controversy here. (3) The trial court erred in dismissing the Bill of Complaint (originally filed by appellant here) without granting relief. (4) The trial court erred in finding that R. E. Gulledge transferred to G. W. Gulledge, E. L. Gulledge or R. L. House any interest in the “trust” (invoved in a chain of title), or the lands here in controversy. (5) The trial court erred in finding (in effect) that any interest of appellant in the minerals in controversy passed in the partition sale. (6) The trial court erred in finding (in effect) that appellee obtained a one-eighth (}/&) or one-sixteenth (Jie) mineral interest in subject lands other than through the partition sale. (7) The trial court erred in overruling objections of appellant and sustaining objections of appellee.
After searching and careful analysis, we conclude that the question on which this case shall turn is, did appellant, Peoples Bank, violate the terms of the Declaration of Trust and the provisions of the Certificate of Interest requiring transfers of the Certificates of Interest to be made only upon the books of the trustees, and if so, did the failure of Peoples Bank to comply with the transfer provisions defeat its purported ownership of the two twenty-fifths (%r>) interest of R. E. Gulledge in the trust property, consequently cancelling clouds on the title of appellee, D’Lo Royalties, Inc., to the two twenty-fifths (%b) mineral interest?
*263 Appellee, D’Lo Royalties, Inc., contends that appellant never obtained the two twenty-fifths (%s) interest of R. E. Gul-ledge in the trust because appellant, Peoples Bank, failed to comply with the trust provisions requiring Certificates of Interest in the trust to be transferred upon the books of the trustees and upon approval of said trustees. On the other hand, appellant contends that the deraignment of title to the interest in dispute here indicates appellant’s ownership of the said interest.
The decision of this case turns largely upon the Declaration of Trust, commonly denominated as a “Massachusetts Trust,” or “business trust.”
The principal provisions of the Declaration of Trust dated November 17, 1924, of the D’Lo Development Trust have been set out in the statement of facts above. Concisely, the provisions were substantially that (1) the title to all the property of the trust was vested in five trustees; (2) the trust was to be operated under the name of D’Lo Development Trustees and could sue and be sued by said name; (3) said Trustees and their successors were vested with authority to hold, manage, administer, and dispose of the property of the trust and any and all additions thereto and profits therefrom as might be deemed to be for the best interest of all the parties interested in said trust; (4) the Trustees had sole control and direction over the operation of said trust through themselves or any employees that they might select and clothe with power and authority to control and manage the same; (5) the Trustees were vested with authority to declare' dividends to be set apart in accordance with the decision and judgment of said Trustees; (6) the Trustees had authority to make assessments against the shareholders in proportion to their respective interest in said trust estate; (7) the Trustees had power * * to execute deeds, leases, and contracts and any other conveyance as they desired; (8) in the event of the resignation or death of any Trustee, the remaining surviving Trustees could select a successor Trustee; (9) the Trustees were authorized to issue to the parties in interest, Certificates of their interest which were subject to all the provisions of the Declaration of Trust and were transferable only on the books to be kept by said Trustees; and (10) the Trustees were vested with full authority to renew the trust at any time after it had been in operation for five years.
This Declaration of Trust clearly indicates that the D’Lo Development Trust was a pure and simple “business trust.”
Business trusts are defined and discussed in Bogert Trusts 2nd Ed. § 291 (1964), as follows at pages 571, 572:
“For many years the trust has been used in Massachusetts as a form of business organization, a substitute for incorporation, and in the years following the First World War the device came widely to be used elsewhere, especially in Texas and other states in the Southern oil fields. Such organizations are usually referred to as ‘business trusts’ or ‘Massachusetts trusts,’ although the term ‘common-law trust’ is also frequently used, emphasizing the fact that the organization is one formed without the aid of statute. * * * ”
A thorough discussion of business trusts is found in numerous authorities, including United States v. Trust No. B. I. 35, Bank of America National Trust and Savings Association, 107 F.2d 22 (9th Cir. 1939); Goldwater v. Oltman, 210 Cal. 408, 292 P. 624 (1930); Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924); 13 Am.Jur.2d Business Trusts §§ 1-107 (1964); and 12 C.J.S. Business Trusts §§ 1-36 (1938).
The Declaration of Trust involved in the case at bar comes within the scope of a business trust as defined by the above authorities.
One of the most comprehensive authorities available on business trusts is Annot., *264 156 A.L.R. 22 (1945). At page 30 of this annotation, we find the following:
“ * * * It is unincorporated, although for the purposes of regulatory statutes or by express statutory inclusion it is sometimes treated as a corporation for certain purposes. It is created by the voluntary act of the parties and is based on contract. It is intended for the purpose of carrying on some kind of business or commercial activity for profit. Indeed, the profit-making function is one of the most significant characteristics of the business trust. Title to the capital of the organization is vested in trustees, who usually manage the affairs of the trust. The beneficial interests in the trust estate and in the profits are evidenced by transferable certificates, similar to corporate shares, and the existence or life of the organization is not affected by the death or disability of a member or shareholder or by the sale or transfer of his interest.”
The nature of business trusts is set forth in the annotation in 156 A.L.R. 22, at pages 87-88 as follows:
“The issuance of certificates evidencing beneficial interests in the property and profits of the trust is one of the characteristic features of the Massachusetts or business trust. ‘These certificates, which resemble certificates for shares of stock in a corporation and are issued and transferred in like manner, entitle the holders to share ratably in the income of the property, and, upon termination of the trust, in the proceeds.’
“The trust instrument often prescribes the terms and conditions of certificates of shares to be issued, which are similar in form and substance to corporate shares.
“Transferable certificates of shares in a business trust ‘are equitable choses in action bearing a close resemblance to certificates of stock in a corporation.’ The certificate is a muniment of title and evidence of ownership of stock. It has been said that such certificates are not chattels, but are evidence of intangible rights which have some of the characteristic qualities of chattels.
“The interest of a shareholder in a business trust has been said to be personalty and not real estate, although the trust estate consists largely of real property, and notwithstanding the frequent statement that shareholders have an equitable interest in the trust property.”
The “business trust” was upheld by this Court in State ex rel. Knox v. Edward Hines Lumber Company, 150 Miss. 1, 115 So. 598 (1928), and its validity was reaffirmed in Enochs & Flowers v. Roell, 170 Miss. 44, 154 So. 299 (1934).
In Enochs & Flowers v. Roell, supra, this Court discussed business trusts as follows :
“In the case of State [ex rel. Knox] v. Edward Hines Lumber Co., 150 Miss. 1, 115 So. 598, we set out all the material contents of what is known as a ‘Massachusetts Trust’; it being a form of business organization where property is conveyed to trustees and held and managed for the benefit of certificate holders, which certificates are, in all respects, like certificates of stock in a corporation, and the trust estate is managed by trustees for the benefit of the cestuis que trustent. * * *
“These business trusts originated more than a half century ago in Massachusetts, where associations of persons entered into these agreements and operated business through trustees for the benefit of the members of the association. In that state, the question soon arose as those instruments came under review by its Supreme Court as to whether or not the associations were, in fact, pure trusts as operated, or were partnerships, and there was evolved the following rule which seems to have been adopted as controlling by the majority of the courts of this *265 country: If the trustees are principals and are free from the control of the certificate holders in the management of the property, a trust is created; but, if the certificate holders are associated together in the control of the property as principals and trustees, it is to be classified as a partnership. * * *”
The Declaration of Trust establishing the business trust in the case at bar contained the following provision regarding transfer of certificates of interest in the trust:
“(6) The trustees may issue to the parties in interest certificates of interest which shall be subject to all the provisions hereof, and shall be transferrable only upon the books to be kept by said trustees.”
The Certificates of Interest themselves contained a like provision:
“This certificate is not transferable and said interest may be conveyed only upon the books of said Trustees by instrument in accordance with the provisions of said Declaration of Trust, and upon approval of said Trustees.”
These provisions regarding the transferability of Certificates of Interest in the present case are similar to those contained and upheld in the case of State ex rel. Knox v. Edward Hines Lumber Company, 150 Miss. 1, 115 So. 598 (1928). Extensive quotation of provisions from the Edward Hines Lumber Company declaration of trust appear in the opinion of this Court, including the following:
“The declaration of trust further provides that the trustees shall issue certificates of beneficial interest in the trust estate to be divided into 3,000 shares without par value, which said certificates shall evidence the beneficial interest of the certificate holders, and shall always be held to be personal property; and may be transferred only by due assignment and record transfer upon the books of the trust estate. * * * ” (115 So. at 601)
The record of the case at bar shows that appellant, Peoples Bank, did not comply with the requirements of the Declaration of Trust nor the provisions of the Certificates of Interest. Sidney Davis, president of Peoples Bank, testified on this subject as follows :
“Q. So far as you know, the deed that was executed on March 22, 1933, from the Gulledge heirs to the Peoples Bank, after the execution of that instrument, it was never presented or any request made to the trustee to make a transfer of that property?
“A. Mr. Henley, I didn’t know who the trustees were or to what trust this thing referred to. It said Ship Island Lumber Company land and the trustees are authorized to make the transfer. I assumed they were keeping up with the records, but as far as my knowing who they were, I didn’t.
“Q. There was, so far as you know, no effort on the part of Peoples Bank prior to this partition suit to have title transferred from the heirs of Gulledge to Peoples Bank?
“A. We filed a deed of record.
“Q. That is all, as far as you know?
“A. As far as I know.”
The rule regarding effectuation of transfers of certificates of interest in a business trust is that, where the declaration of trust prescribes the manner in which shares or certificates of interest shall be transferred, there must be a compliance therewith. 13 Am.Jur.2d Business Trusts § 28 (1964); 12 C.J.S. Business Trusts § 17 (1938). The rule is well stated in Annot., 156 A.L.R. 22 (1945), at pages 94 through 95 as follows:
“The conditions prescribed by the trust instrument, either upon the right to assign or transfer shares in a business trust or upon the manner in which such *266 a transfer is to be effectuated, must be complied with.
“if *
“Thus, a provision of the trust instrument that no transfer of shares shall be valid, until all previous calls thereon had been paid and unless the transferee should have been approved by the directors of the trust and executed a proper instrument binding him to the observance of the regulations of organization, was held to be a condition precedent to a valid transfer.

“Trust instruments often require that transfers of shares be entered in the books of the trust. Such provisions are binding upon all persons, shareholders, transferees, and trustees.”
Since appellant, Peoples Bank, failed to comply with the conditions prescribed by the Declaration of Trust regarding the transferability of certificates of interest, Peoples Bank cannot now recover any interest in the trust attempted to be transfered to it by R. E. Gulledge and his heirs. Cf. “The Mississippi Investment Trust Act,” Section 5570-06, Mississippi Code 1942 Annotated (Supp. 1968).
We are of the opinion that appellant, Peoples Bank, failed to secure the transfer of its claim to the R. E. Gulledge interest according to the provisions of the Declaration of Trust and the Certificate of Interest that required transfers of Certificates of Interest be made only upon the books of the trustees; therefore, appellant Bank never obtained the R. E. Gulledge, interest.
Appellant, Peoples Bank, also contends that the trust terminated on November 18, 1934. This date was exactly five years from the execution of the trust extension by the trustees on November 18, 1929, and it is said that on the expiration of the trust in 1934, the title to the trust property passed by operation of law to the beneficiaries of the trust. Appellant asserts that at this point the after-acquired title doctrine comes into play, and therefore, even if the Gulledge heirs got title to the two twenty-fifths (%s) interest of R. E. Gul-ledge because of a lack of transfer of the certificates to Peoples Bank, nevertheless the assignment given by the Gulledges to Peoples Bank was a “deed to interest in land,” and their after-acquired legal title, if Peoples Bank did not already have it, passed forthwith to Peoples Bank under their land deed.
Appellant’s theory that the Gul-ledges subsequently acquired title to the subject lands upon the termination of the trust in 1934, and that the after-acquired title passed to Peoples Bank the moment it came to the Gulledges is an interesting theory, but it is untenable.
This case is controlled by the rule that unless the purpose of the trust is accomplished, a trust does not terminate until the trustees have finally accounted and conveyed the trust property to the persons entitled to it on the termination of the trust. When the time for the termination of the trust arrives, the duties and powers of the trustees do not cease immediately, but rather hold on until the trust is closed. The trustees have the duties and powers appropriate for a complete settlement of trust affairs and transfer of its property to the proper persons. 4 Scott on Trusts, 3rd Ed. § 344 (1967); Bogert, Trusts, 2nd Ed. § 1010 (1962); Restatement of Trusts 2d § 344 (1959) ; 89 C.J.S. Trusts § 96 (1955).
On November 18, 1934, the purposes of the D’Lo Development Trust had not been accomplished. The provision with respect to the termination of the trust is found in Section 3 of the Declaration of Trust. Part of this provision reads as follows:
“ * * * After expiration of the time limit herein, this trust may be renewed by the trustees or the beneficiaries in the trust in which event the terms, conditions, and arrangements of this *267 trust may be modified or changed as will then appear to be agreeable.”
We are of the opinion that, since the trust itself provided that it could be extended by the trustees or the certificate holders and no particular means of extension is provided, the trust was in fact extended in 1934 by the continued actions of the trustees in an effort to carry out the trust purposes. Title to the lands in the trust remained vested in the trustees until the trust was closed in the summer of 1937 through the chancery court. The title to the property held in trust never vested in the certificate holders.
The trustees in this case would have been derelict in the performance of their duties to the certificate holders if they had failed to terminate the trust by a petition in court in a manner accomplished in the court proceedings in 1937. Despite continued efforts to carry out the purposes of the trust after 1934, the lands went to the state for taxes in 1935, and the title would have ripened in the state on September 16, 1937. The action taken through the chancery court by the trustees from June through August 1937 in order to sell the trust lands and divide the proceeds among the certificate holders was necessary before the trust could be properly dissolved and terminated. What the trustees did was in the nature of a final accounting and was reasonable under the circumstances to finally close the trust affairs. See Restatement of Trusts 2d § 347(e) (1959).
The conclusion we reach, deducible from the above authorities and reasoning, is that the after-acquired title doctrine, which appellant asserts, does not apply in the case at bar. No title to the subject lands ever vested in the Gulledges, and therefore, no title could have vested in the Peoples Bank.
We are of the opinion, and so hold, that the decree of the chancellor below should be, and is, affirmed.
Affirmed.
GILLESPIE, P. J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.