[Civ. No. 41143. First Dist., Div. One. June 14, 1978.]

EDWARD P. BOTSFORD, as Trustee, etc., et al.,
Plaintiffs and Appellants, v.
HASKINS AND SELLS, Defendant and Respondent.

**COUNSEL**

Gerhard Stoll, Robert J. Donovan and Erwin S. Solomon for Plaintiffs and Appellants.

Ackerman, Johnston, Norberg & Parkinson, Willard S. Johnston and William F. Campbell for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—Plaintiffs Lawrence Investment Corporation and Paicines Properties Corporation, and Edward P. Botsford, as trustee, commenced an action for damages against defendant Haskins and Sells on a purported cause of action previously owned by the corporations. The superior court entered summary judgment in favor of the defendant, from which judgment the several plaintiffs have appealed.

We have concluded that the appeal of plaintiff Botsford, as trustee, has merit and that those of the corporate plaintiffs do not. We proceed to state our reasons.

There was no substantial dispute in the superior court proceedings concerning the facts upon which the summary judgment was based. Those facts may reasonably be condensed to the following.

Lawrence Investment Corporation, with over 30 shareholders, owned about 98 percent of the outstanding shares of Paicines Properties Corporation whose 500 minority shareholders held the remaining 2 percent. The corporations, having made plans to liquidate their affairs, entered into identical liquidating trust agreements with a trustee, one Schlegel. Lawrence Investment Corporation's agreement was dated March 26, 1968, and that of Paicines Properties Corporation, December 20, 1968.

By its liquidating trust agreement each corporation assigned all of "its right, title and interest in and to all of its assets" to the trustee. Each agreement also provided: "Subject to the terms and conditions of the trust, Trustee shall have all the rights of an owner of every asset and may exercise the rights and privileges of an owner with respect to any asset"; and "He shall also have the power . . . to institute . . . actions at law or equity, [and] to take any and all steps which in his discretion are necessary and advisable in the protection of the trust estate . . . ."

Paragraph 9 of each agreement provided for the trust's termination in this manner: "This trust shall continue for a period of three years unless sooner terminated or extended. It may be extended and successively extended for any designated period or periods not in excess of two years each, not exceeding a total of ten (10) years, by written direction signed by shareholders of Trustor holding a majority of the voting power, delivered to Trustee before it would otherwise terminate. *The trust shall*

*terminate upon the expiration of the period or periods as extended as provided herein, unless sooner terminated."* (Italics added.)

Schlegel resigned as trustee of both liquidating trusts on December 22, 1972, and Botsford became successor trustee on the same day. The Lawrence Investment Corporation trust was extended as permitted by its paragraph 9 so as to terminate March 25, 1973. The Paicines Properties Corporation trust was extended in the same manner so as to terminate on December 19, 1973.

The instant action was commenced by Botsford, as trustee, and the two corporate plaintiffs on January 3, 1974. It will be observed that each trust had terminated, according to paragraph 9 of the agreement creating it, *prior* to commencement of the action.

Giving effect to defendant's contentions, the superior court's minute order granting the motion for summary judgment recited: "Defendant Haskins & Sells' motion for summary judgment, heretofore submitted, is granted. The corporate plaintiff has no standing to sue because it has irrevocably assigned all its assets to the trustee. *McCown vs. Spencer,* 8 C.A.3d 216. The trustee plaintiff has no power to sue because his powers under the trust terminated prior to the commencement of the action. *Crocker-Citizens National Bank vs. Younger,* 4 C.3d 202."

We first consider the appeal of plaintiffs Lawrence Investment Corporation and Paicines Properties Corporation.

■ As has been indicated each of the liquidating trust agreements executed by the corporate trustors provided: "Trustor hereby grants, transfers, assigns and delivers all of its right, title and interest in and to all of its assets,[1] of whatsoever nature and wheresoever situated, to Trustee to be held and administered by him in trust for the uses and purposes and subject to the terms and conditions hereinafter set forth."

It follows that any cause of action which the corporations, or either of them, may have had against defendant was irrevocably assigned to the designated trustee subject to the terms and conditions of the trusts. Those terms and conditions concededly provided for no remainder, or reserva-

---

[1]The liquidating trust agreement of Lawrence Investment Corporation at this point stated "except 53,103 shares common stock of Paicines Properties Company [*sic*]," a circumstance which the parties, and we, find of no significance or relevance to the appeal.

tion of interest, of any kind in the corporate trustors; the transfers were instead, absolute.

We find controlling, as did the superior court, *McCown* v. *Spencer,* 8 Cal.App.3d 216, 225 [87 Cal.Rptr. 213], holding that: "An assignor may not maintain an action upon a claim after making an absolute assignment of it to another; his right to demand performance is extinguished, the assignee acquiring such right." As to the corporate plaintiffs, the summary judgment was properly entered.

We consider now the appeal of plaintiff Botsford as trustee under the two liquidating trust agreements.

In the superior court defendant contended (as it does here), and the court agreed, that "the trustee plaintiff has no power to sue because his powers under the trust terminated prior to the commencement of the action." Our remaining inquiry is whether the contention is a correct statement of the law.

█ The assignments in trust of *all of the corporate assets* to the trustee necessarily included any existing cause of action against defendant. As pointed out, the corporations had divested themselves of any remaining right or interest therein. And the trusts' beneficiaries, the corporate shareholders, had no legal title or ownership interest in the assets; their right was limited to the enforcement of the trusts, according to their terms. The title, and right to sue, were vested in the trustee. (See generally, Civ. Code, § 863; *Estate of Troy,* 214 Cal. 53, 56 [3 P.2d 930]; *Estate of Fair,* 132 Cal. 523, 536 [60 P. 442, 64 P. 1000]; *Anglo California Nat. Bank* v. *Kidd,* 58 Cal.App.2d 651, 654 [137 P.2d 460]; *Craven* v. *Dominguez Estate Co.,* 72 Cal.App. 713, 717-718 [237 P. 821].)

█ We hold that the applicable rule is to be found in the Restatement Second of Trusts, section 344, which states:

"When the time for the termination of the trust has arrived, the trustee has such powers and duties as are appropriate for the winding up of the trust."

In the official, and ensuing, "Comment" upon section 344, the following will be found:

"*a. The time for the termination of the trust.* . . . Although the time for the termination of the trust has arrived in accordance with the terms of the trust, the trustee does not thereby necessarily cease to be trustee, but he continues to be trustee until the trust is finally wound up. . . .

"The powers and duties of the trustee in the winding up of the trust are similar to the powers and duties of the trustee in administering the trust . . . except so far as they are modified because of the fact that the trust is in process of termination. . . .

"*b. Powers necessary or proper for winding up the trust.* When the time for terminating the trust has arrived the trustee can properly exercise such powers as are necessary or proper for winding up the trust. . . .

"*c. Preservation of the trust property during the period of winding up the trust.* Although the time for terminating the trust has arrived, the trustee can properly exercise such powers as are necessary or proper for the preservation of the trust property until the process of winding up is completed."

Section 344 of the Restatement Second has been expressly adopted and followed by the following authority: *Breen* v. *Breen,* 411 Ill. 206, 210-212 [103 N.E.2d 625]; *Account of First National Bank & Trust Company,* 382 Pa. 486 [115 A.2d 167, 177]; *Harlan* v. *Gleason,* 180 Md. 24 [22 A.2d 579, 581]; *Peoples Bank* v. *D'Lo Royalties, Inc.* (Miss.) 235 So.2d 257, 266; *Leith* v. *Mercantile Trust Company National Ass'n* (Mo.App.) 423 S.W.2d 75, 85; *Lang* v. *Taussig* (Mo.) 180 S.W.2d 698, 703; *Beeler* v. *Fidelity & Columbia Trust Co.,* 293 Ky. 361 [169 S.W.2d 16, 19].

Although the Restatement's rule has not been expressly adopted in California, the state's high court appears to have accepted it in substance. In *Hise* v. *Superior Court,* 21 Cal.2d 614 [134 P.2d 748], a trust had terminated according to its provisions. But the court said (p. 625): "There could be no termination of the trust until the trustee's obligations had been performed and, as a consequence, the respondent had jurisdiction to determine the extent of and enforce those obligations." And in *Estate of Scrimger,* 188 Cal. 158, 168-169 [206 P. 65], the court said: "It was the duty of trustees to care for the trust estate, even after the trust terminated, where there was a dispute as to the rights of the beneficiaries, until the matter was settled by the court having jurisdiction over the settlement of their final account."

Varied expressions of the rule are found elsewhere, as follows: *Harlan v. Gleason, supra,* 22 A.2d 579, 581: " '[F]inal distribution is as much a part of the trustee's duties as the administration of the trust prior to that time. A trust does not become fully executed until the subject matter of it has been properly paid over to the beneficiaries of the trust.' "

*Account of First National Bank & Trust Company, supra,* 115 A.2d 167, 177. "The beneficiaries claim that in any event the Bank should not have been allowed annual commissions after the trust ended by its terms in 1937, but the duties and powers of the substituted trustee did not immediately cease at that time but continued to the extent appropriate until it finally accounted and conveyed the trust property to those entitled . . . ."

*Peoples Bank v. D'Lo Royalties, Inc., supra,* 235 So.2d 257, 266. "This case is controlled by the rule that unless the purpose of the trust is accomplished, a trust does not terminate until the trustees have finally accounted and conveyed the trust property to the persons entitled to it on the termination of the trust. When the time for the termination of the trust arrives, the duties and powers of the trustees do not cease immediately, but rather hold on until the trust is closed. The trustees have the duties and powers appropriate for a complete settlement of trust affairs and transfer of its property to the proper persons."

*Neary v. City Bank Farmers Trust Co.,* 260 App.Div. 791 [24 N.Y.S.2d 264, 267]. "When the time for the termination of an express trust has arrived, it does not follow that the trustee is immediately divested of all duties and responsibilities, for until the trust is closed out it has the duties and powers appropriate for a complete winding up. There is no automatic cessation of the trustee's duties and responsibilities upon receipt of notice of revocation; nor is the time for distribution the controlling date. The trust is at an end when the trustee has finally accounted, conveyed the property to the persons entitled to it, and been discharged."

*In re Miller's Will,* 257 N.Y. 349 [178 N.E. 555, 556]. "Until the act of division and distribution should be fully performed, the administration of the trust would not be complete."

*Leith v. Mercantile Trust Company National Ass'n, supra,* 423 S.W.2d 75, 85. "Mercantile continued as Trustee after the death of Clara Rosenthal. Although the time for the termination of the trust estate had arrived Mercantile continued to be Trustee until it distributed the trust

property. During the period of winding up the trust it was under a duty to take such steps as were necessary toward distribution and to exercise reasonable care and skill in the preservation of the trust property until it had made distribution. It had such powers and duties as were appropriate for the winding up of the trust."

*In re Lathers' Will,* 137 Misc. 226 [243 N.Y.S. 366, 377]. "The trust estate may be ended, trustees may be compelled to distribute, but, until they do distribute, ownership and title to the fund remains in the trustees, . . ."

*Hausman v. Bourne,* 152 N.Y.S.2d 667, 668-669. "Though the trust for the life of Bourne, Sr., ended on his death, the corpus did not vest automatically in the remaindermen or their assignees. The trustees continue in possession until they make proper distribution . . . ."

To the same general effect see also *Del Veccio v. Hood,* 4 N.J.Super. 254 [66 A.2d 738, 740], and *Kimble v. Baker* (Tex.Civ.App.) 285 S.W.2d 425, 431.

And the rule is well summarized in 90 Corpus Juris Secundum, Trusts, section 246, pages 220-221, in this manner: "Where the time for termination of a trust has arrived in accordance with the terms of the trust, the trustee does not thereby cease to be trustee, but he continues to occupy such office until the trust is finally wound up by distribution of the trust property, and he may properly exercise such powers as are necessary or proper for winding up the trust in accordance with the directions of the settlor." (Fn. omitted)

■ The rule which we apply does not, as urged by defendant, fail to effectuate Civil Code section 2258 requiring a trustee to "follow all the directions of the trustor," and Civil Code section 2267 limiting his authority to "such as is conferred upon him by the declaration of trust . . . and none other." "A court of equity may modify a trust on a proper showing of changed conditions occurring after the creation of a trust if the rights of all the beneficiaries may be protected." (*Estate of Van Deusen,* 30 Cal.2d 285, 292 [182 P.2d 565]; and see *Estate of Bullock,* 264 Cal.App.2d 197, 204-205 [70 Cal.Rptr. 239].) And "a trustee has 'authority to adopt measures and to do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making it effectual.'" (*Gilbert v. Penfield,* 124 Cal. 234, 238 [56 P. 1107]; and see *Mabry v. Scott,* 51 Cal.App.2d 245, 256-257 [124 P.2d 659] [cert. den., 317 U.S. 670 (87 L.Ed. 538, 63 S.Ct. 75)]; *Craven v.*

*Dominguez Estate Co., supra,* 72 Cal.App. 713, 719 [237 P. 821].) This authority has never been held to contravene Civil Code sections 2258 and 2267 in any way.

We are of the opinion that a reasonable continued function of the trustee Botsford was to liquidate, if possible, the plaintiff corporations' erstwhile claims against defendant which had been assigned to him. It would have been wholly unreasonable for the trustee, upon the trusts' termination, to distribute that cause of action to the 500-odd shareholders of the plaintiff corporations, as their individual interests might appear. Indeed such a distribution would patently have frustrated the purpose of the trusts. It may be that the trustee was dilatory in the administration of his trusts (the record is silent on the subject), but that is a matter of which the shareholder beneficiaries might reasonably complain, not the defendant here. As said in *In re Lathers' Will, supra,* 243 N.Y.S. 366, 377: "The trust estate may be ended, trustees may be compelled to distribute, but, until they do distribute, ownership and title to the fund remains in the trustees, . . ."

As we have observed, under the rule which we here adopt and follow, plaintiff Botsford, as trustee of express trusts was, and is, the legal owner of the asserted claims against defendant. As such, he, and not the shareholder beneficiaries, is the proper real party in interest in an action to enforce them. (See Code Civ. Proc., § 369; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 106, p. 1781, and authority there collected.) For that reason defendant's expressed fear of future lawsuits by the shareholder beneficiaries is reasonably, and legally, unfounded.

Defendant places principal reliance upon the case of *Harshbarger* v. *Harrison,* 124 W.Va. 688 [22 S.E.2d 303]. There the reviewing court discerned the general rule to be that "if there is nothing to the contrary appearing upon the face of the trust instrument, the required powers of the named trustees extend by necessary implication beyond the instrument's time limit so as to include a reasonable 'winding up' period." (22 S.E.2d at p. 308.) Thus the "general rule" of *Harshbarger* approximates that which we here follow. But the *Harshbarger* court, finding itself "governed by the context of the trust instrument," concluded that the trust instrument "does not confer upon the trustees the power after [its termination date] to institute proceedings upon the trust assets for the purpose of reducing them to judgment." In the liquidating trust agreements of the case at bench nothing is pointed out, or found, which would permit an interpretation contrary to the rule that: "When the time

for terminating the trust has arrived the trustee can properly exercise such powers as are necessary or proper for winding up the trust." (See Rest.2d Trusts, § 344, com. b, p. 191.)

To some extent defendant also relies upon language of *Arrington* v. *Hosemann* 224 Ga. 592 [163 S.E.2d 722, 724]: "[T]he trust had become completely executed at the time the instant complaint was filed and the complainants had no standing to maintain an action to recover the trust property. Such right, if it exists at all, reposes solely in the beneficiaries." ██ ██ ██ This authority is also inapposite, for in the case at bench the corporate affairs were not entirely liquidated, nor the trusts "completely executed,"[2] nor did the shareholder beneficiaries have such ownership or title to the cause of action against defendant as would permit them to maintain an action thereon.

To such extent as *Harshbarger* v. *Harrison,* and *Arrington* v. *Hosemann,* may be in conflict (we think they are not) with the rule we have announced, we find them to be contrary to the great weight of authority throughout the nation. Nothing is observed in the case of *Crocker-Citizens National Bank* v. *Younger,* 4 Cal.3d 202 [93 Cal.Rptr. 214, 481 P.2d 222, 56 A.L.R.3d 1228], cited by the superior court, tending to impugn our holding. And we find it unnecessary in our disposition of the appeal to consider other points raised by the respective parties.

The summary judgment is reversed as to plaintiff Edward P. Botsford, as trustee. As to plaintiffs Lawrence Investment Corporation and Paicines Properties Corporation the judgment is affirmed. Plaintiff Botsford, as trustee, will recover his costs of appeal from defendant; otherwise the parties will stand their respective costs.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied July 11, 1978, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied August 10, 1978.

---

[2]As earlier noted, *Harlan* v. *Gleason,* 180 Md. 24 [22 A.2d 579, 581], states: " 'A trust does not become fully executed until the subject matter of it has been properly paid over to the beneficiaries of the trust.' "